(June 21, 1910.)

## OTIS BROWN et al., Respondents, v. E. B. BROWN, Appellant.

[110 Pac. 269.]

BOUNDARY LINE—HOW ESTABLISHED—TITLE BY ADVERSE POSSESSION—EVIDENCE—INSUFFICIENCY OF—FINDINGS OF FACT—ACQUIESCENCE.

(Syllabus by the court.)

1. Under the provisions of sec. 4043, Rev. Codes, to obtain title by adverse possession, the land is deemed to have been possessed and occupied in the following cases, only: "1. Where it has been protected by a substantial inclosure;  2. Where it has been usually cultivated or improved.  *Provided, however,* That in no case shall adverse possession be considered established under the provisions of any sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land according to law."

2. *Held,* that the evidence in this case is not sufficient to support the findings of fact to the effect that the division line fence has been regarded by all of the parties concerned or interested in said boundary line as the true and correct boundary line and acquiesced in as the true and correct boundary line.

3. *Held,* that the facts of this case do not bring it within the rule laid down in the case of *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066.

4. Acquiescence in the maintenance of a line fence for a great length of time may be presumptive evidence of an agreement as to a boundary line, but is not conclusive evidence, and will not overcome a positive agreement or understanding that after the true line is established, the fence will be made to conform to it.

5. Where one seeks to procure title to another person's land under the rule of long acquiescence or adverse possession, he must establish his right by clear and satisfactory evidence.

APPEAL from the District Court of the Third Judicial District, for the County of Ada.  Hon. Fremont Wood, Judge.

Action to quiet title to real estate.  Judgment for plaintiffs. *Reversed.*

Good & Adams, for Appellant.

The evidence in this case shows that the possession of the plaintiff and her grantors was by agreement and under license and permission of the defendant's predecessors in interest and grantors, and it matters not whether the same stood on the line forty years or any number of years, the title of plaintiff could not ripen, as against the defendant and his grantors, into a· prescriptive title. (1 Cyc. 1030; *Jensen v. Hunter* (Cal.), 41 Pac. 14; *Nieto v. Carpenter*, 21 Cal. 455.)

Where owners of adjacent tracts, being ignorant of the location of the true line, occupy up to a line which they agree is merely provisional and to continue only until the true line is thereafter determined, neither can acquire title to any land not within the true line. (*Peters v. Gracia*, 110 Cal. 89, 42 Pac. 455; *Calanchina v. Bransteter*, 84 Cal. 249, 24 Pac. 149; *Quinn v. Windmiller*, 67 Cal. 461, 8 Pac. 14; *Irvine v. Adler*, 44 Cal. 559; *McNamee v. Moreland*, 26 Iowa, 96; *Bunce v. Bidwell*, 43 Mich. 542, 5 N. W. 1023; *Bryson v. Slagle*, 44 N. C. 449; *Lowe v. Cunningham* (Tenn. Ch.), 39 S. W. 1052; *Thompson v. Slater* (Tex. Civ. App.), 34 S. W. 357; *Russell v. Maloney*, 39 Vt. 579, 94 Am. Dec. 358.)

For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied only in the cases specified in sec. 4043, Rev. Codes. (*Brose v. Boise City R. etc. Co.*, 5 Ida. 694, 51 Pac. 753; *Central Pac. R. Co. v. Shackelford*, 63 Cal. 261; *S. P. R. Co. v. Whitaker*, 109 Cal. 268, 41 Pac. 1083; *Swank v. Sweetwater Irr. Co.*, 15 Ida. 353, 98 Pac. 297; *Green v. Christie*, 4 Ida. 438, 40 Pac. ·54; *Little v. Crawford*, 13 Ida. 146, 88 Pac. 974.)

W. B. ·Davidson, and Harry Keyser, for Respondents.

Where the boundaries are doubtful, actual occupation for a number of years up to the line whence the party supposes his land to extend, without any opposition from the adjoining proprietor, is strong presumptive evidence of the true place

of the line, and the fact that the land was held through a mistake as to the extent of the boundaries will not destroy the adverse character of the holding if the party has occupied and received the rents and profits as his own. (*French v. Pearce*, 8 Conn, 439, 21 Am. Dec. 680.)

Where there has been no express agreement, long acquiescence by one in the line assumed by the other is evidence of an agreement. (*Kip v. Norton*, 12 Wend. 127, 27 Am. Dec. 120.) And if continued sufficiently long to give title by prescription, is conclusive evidence. (*Jackson ex dem. Suffern v. McConnell*, 19 Wend. 175, 32 Am. Dec. 439.)

"Jury may infer a practical location of the disputed boundary line by agreement from long acquiescence." (*Turner v. Baker*, 64 Mo. 218, 27 Am. Rep. 226; *Columbet v. Pacheco*, 48 Cal. 395; *White v. Spreckels*, 75 Cal. 610-616, 17 Pac. 715; *Burris v. Fitch*, 76 Cal. 395, 18 Pac. 864; *Bayhouse v. Urquides*, 17 Ida. 286, 105 Pac. 1066.)

SULLIVAN, C. J.—This action was brought to quiet the title to about 1.81 acres of land situated in Ada county. The complaint is in the usual form of one to quiet title, and prays that the defendant be required to set forth the nature of his claim and that the title be quieted in plaintiffs.

It is alleged in the complaint that there had been maintained a division fence between the lands of plaintiffs and defendant for thirty years, and that said division fence was constructed by one Peter Brown, the predecessor of plaintiffs, and one G. F. Rhodes, one of the predecessors of the defendant, and at the time it was so constructed was established by said Brown and Rhodes as the true and correct boundary line between their respective lands; and it is also alleged that said line fence has been regarded by all of the parties concerned or interested as the true and correct boundary line between said lands for thirty years.

The defendant in his answer denies the material allegations of the complaint on information and belief, and by way of cross-complaint alleges that he is the owner and entitled to the possession of the land in dispute as a part of the N. W. ¼

of the S. E. ¼, and also of other lands in the N. W. ¼ of the
S. E. ¼ and a part of lot 3, all in sec. 24, township 4 N., R.
1 E., B. M., in Ada county, which described land includes the
land in dispute.

Upon the issues thus made the cause was tried by the court
without a jury and judgment entered in favor of the plaintiff
as prayed for in his complaint. The court thereafter denied
a motion for a new trial and this appeal is from the judgment
and order denying a new trial.

The errors assigned go to the sufficiency of the evidence
to sustain the findings and that the court erred in entering
judgment for the plaintiff.

It appears from the evidence that one Peter Brown, the
husband of the plaintiff, Caroline Brown, became the owner
of the S. ½ of the N. W. ¼ and all that part of the S. W. ¼
of the N. E. ¼ lying south and west of what is known as the
Valley Road, and lot No. 4, of sec. 24, tp. 4 north of range
1 E., B. M., as early as 1882.

In 1870, G. F. Rhodes became the owner of the N. W. ¼ of
the S. W. ¼ and a part of the N. W. ¼ of the S. E. ¼ and lot
No. 3 of said section 24, consisting of 126 acres of land, and
continued to own it until about July, 1906, when he sold and
conveyed it to one Len Dobson, and Dobson thereafter con-
veyed it to Harris and Harris to the respondent, E. B. Brown.

There is no question but that the land in dispute is a
part of the N. ½ of the S. E. ¼ and lot 3 of said sec. 24, as
per government survey, which land was originally entered and
patent procured from the government thereto by the said
Rhodes, and the claim of respondents thereto is based upon
the fact that the division fence between said land of Brown
on the south and east and on the north and west of the Rhodes
land was from nine to twelve feet in on the north side of the
Rhodes land and 122 feet in on the west side of the Rhodes
land, making an area of 1.81 acres in dispute.

In support of their contention, the respondent, Mrs. Caro-
line Brown, testified that she had resided on the land claimed
by the respondents since 1883; that she is acquainted with
the Rhodes ranch now occupied by the appellant, E. B.

Brown; that there was a division fence between the Peter Brown ranch and said Rhodes ranch at the time she first became acquainted with it, part of which was wire and part brush; that that fence had never been changed from that line, but there had been a new fence put on the line, built in the same place the old fence was built, and that is the fence that is now situated there; that it is in the same place the fence was in 1883 when she first knew the land; that her deceased husband, Peter Brown, in his lifetime farmed the Peter Brown ranch up to that fence; that it was cultivated in 1883 and has been continuously since; that Rhodes lived on the adjoining ranch up to five or six years prior to the trial of this action, when he sold the land to one Dobson, that there was never any dispute between said Rhodes and said Peter Brown as to the boundary line between said lands; that each party was occupying up to that time the land on the respective sides of said fence; that the fence was kept in repair by both of the parties.

Another witness testified on behalf of the respondents that he had known said ranch since 1882; that he was employed on that ranch in 1882 and continued to be employed there off and on for about ten years; that he was acquainted with the Rhodes ranch adjoining the Brown ranch; that at the time there was a division fence between said ranches; that it consisted of a wire, a worm and a brush fence; that it was a complete division fence between said ranches; that it looked as though it had been there four or five years; that the division fence now between said ranches stands in the same position and on the same line as the old fence when he first knew the land in 1882, that is, that it looked to the witness to be in just the same place, and he testified as follows: "Any more than, of course, a wire fence, you know, backs up about four feet, I judge"; that the Rhodes ranch was cultivated up to the line fence, that Peter Brown kept up a part of the fence and that Rhodes kept up the other part.

Otis Brown testified on behalf of the respondents that he was the son of Peter Brown; that he was twenty-five years of age and that he had lived on the Peter Brown ranch all

his life; that he is acquainted with the division line fence; that said fence has been in the place where it now is for twelve or thirteen years, or as far back as witness could remember; that it had not been changed since that time; that the Brown ranch had been cultivated continuously up to the line fence, and that the Rhodes ranch had been cultivated up to the said line fence.

Another witness testified on behalf of the respondents that he had known said ranches since 1882; that he had worked for Peter Brown along in 1882 or 1883, about a month or two and had worked for him a few times since; that at the time he went to work for Brown there was a division fence between said ranches; that said fence consisted of wire and brush; that in 1882 said fence was an old fence; that witness had been on the ranch but very little since fifteen or sixteen years before Brown's death.

That was substantially all of the evidence offered by the respondents.

G. F. Rhodes testified, by deposition, on behalf of the appellant. He testified that he became the owner of the Rhodes land referred to in 1870 and had owned it until about six years prior to July, 1909; that he was well acquainted with the Brown land adjoining on the north and west of the Rhodes land; that witness owned the land mentioned at the time there was a partition fence erected between said ranches; the partition fence running north and south was erected fifteen or sixteen years prior to the trial; when the construction of that fence was arranged for, the only persons present were the witness Rhodes, his son and the said Peter Brown; at that time the son was between fifteen and seventeen years old; that Brown came to Rhodes and wanted to put up a fence and build it on the line, or as near the line as they could; that Brown informed the witness Rhodes that he had seen D. O. Stevenson, a surveyor, in regard to his establishing said division line, but that Stevenson had not the time to do it, and told him that if he would go at noon and run it by the shadow of some one who would stand on the corner, that that would give the north and south line; that they did not

know where the corner was, but that they guessed at where it was, and the boy stood on the corner, or where Brown and the witness thought it was, and they ran the line by the boy's shadow; that that was the way they arranged to construct the north and south fence; that neither Brown nor witness knew where the line was; that they did not establish the line for the fence running east and west; that Brown put up his part of the fence and that Rhodes built the rest of it; that neither of them knew where the true line was; that they just put the fence there; that witness paid all taxes on the land in dispute during all of said time, including the entire 126 acres in said ranch. Witness also testified that he did not object to the construction of the east and west fence where it was placed; that they did not know where the true line was; that so far as he was concerned, he gave his permission to have the fence erected at that place for the time being; that neither the plaintiffs nor their predecessors in interest at any time paid any taxes on the land in dispute but that witness had paid all such taxes; that they agreed to put the fence where it was placed; that their understanding was they would put it on a true line when the survey was made; that was the understanding between witness and Brown; that so far as witness knew, until recently the line had never been surveyed; that there never was any talk or agreement between witness and Brown that he was to have and receive any portion of the land belonging to Rhodes by reason of the erection of said fence; that they simply agreed to place the fences where they were, and the understanding was that they would have a survey made sometime; that Brown stated he was not satisfied, that he thought the fence was over on his land, but was satisfied to let it remain until a survey could be made.

On cross-examination he testified that the east and west line was probably run between fifteen and eighteen years before Peter Brown died; that witness did not regard the line between the respective lands as the true line, but thought it was somewhere near the line; that there was present when the north and south line was run by the boy's shadow, Brown

and witness, and the fence was erected by the line staked out
by the boy's shadow and from that time on witness left the
fence standing on that line; that during all of that time they
used that as a division fence between their farms; witness
never made any objection to the fence being where it was
and never demanded any survey; that he did not claim any
of the land lying within the inclosure of Brown's field because
he did not know it was there; that when the said fences
were erected, he supposed they were somewhere near the
line; that the east and west line was run by the Green Meadow
ranch, which someone had informed them was on the true
line; that neither of them believed at the time said fence
was erected that it was upon the true line but that it was
somewhere near it; that they just put the fence there until
a survey should be made; that neither of them objected to
having the fence put where it was; that there was nobody
present that the witness knew of when the east and west line
was established; that witness was not there; that there was
a rail fence there and that witness put up a wire fence on
the same line; that he put his wire fence back a little; that
witness "hooked on" to Brown's fence and made his part
of the east and west division fence; that Rhodes at all times
claimed all of the land included in the description of his
patent from the government and claimed all of the land that
said patent called for.

The son of the last-mentioned witness also testified by
deposition that he was thirty years of age; that he was ac-
quainted with the 126 acres of land known as the Rhodes
ranch, and also the Peter Brown ranch adjoining; that he
remembered when there was a fence erected between the land
owned by his father and that owned by Peter Brown; that he
was present and assisted in the establishment of the fence;
that there was present at that time Peter Brown, witness
and his father; that witness remembered seeing them run the
line; that witness stood on what was supposed to be the corner,
and that they ran the line by his shadow, and that the north
and south fence was erected between his father's ranch and
the Brown ranch in that way; that they built the fence as

near as they could, and if a survey was made, if it was not on the true line, it was the understanding that the division line fence would be erected upon the true line; does not remember who built the first part of the east and west fence; that witness was fifteen or sixteen years old when the north and south fence was built; it was stated there that when a survey should be made, they would erect the fence on the correct line.

On cross-examination the witness stated that he did not know anything about when the east and west fence was built, and that there was a rail fence upon the east and west line at the time the north and south fence was erected; that as near as witness could remember, it was about sixty feet in on his father's land and that they moved his father's fence out on Mr. Brown's land; that as near as he could remember, the old rail fence was over on Brown's land; that they did not establish the east and west line and that he did not know when the old rail fence was put there; that they did not establish the north and south fence as being on the true line; that they put up that fence at that time with the understanding that when the true line was established, if the fence was not on it, they would move the fence to the true line; that that arrangement was satisfactory to Mr. Brown until a survey should be made.

The above and foregoing is the substance of all the evidence introduced, except that of a surveyor who had surveyed the lines and made a plat of his survey, which plat was introduced in evidence. Upon the evidence the trial court found that the plaintiffs and their predecessors, for more than twenty-five years, had had possession of and cultivated the strip of land in dispute; that the division fence was constructed by said Peter Brown and Rhodes more than twenty-five years prior to the trial of this cause, and had been in its present position since that time; that it was established by said Brown and Rhodes as the true and correct boundary line between their respective premises, that said fence had been regarded by all the parties concerned or interested as the true and

correct boundary line between said premises for twenty-five years, and had also been so regarded since it was originally constructed, and that said fence during all of said period had been acquiesced in as the true boundary line between said premises; that the plaintiffs and their predecessors had been in open, notorious, continuous and adverse possession of the land in dispute since said fence was established or originally constructed, and on said findings entered judgment in favor of the plantiffs, quieting the title in them.

The court evidently did not base its decision upon the ground of title by adverse possession, as under the provisions of sec. 4043, Rev. Codes, to constitute adverse possession and obtain title thereby, the land is deemed to have been possessed and occupied in the following cases *only:*

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved. *Provided, however,* that in no case shall adverse possession be considered established under the provisions of any sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land according to law."

Under the provisions of that section, one cannot obtain title by adverse possession unless it shall be shown that the land has been occupied and claimed for a period of five years continuously, and that the party or persons, their predecessors and grantors, have paid all taxes, state, county or municipal, which shall have been levied and assessed upon such land according to law. In the case at bar, it appears from the evidence that the respondents have never paid any taxes whatever upon the land in dispute, and that the appellant and his grantors have paid all the taxes legally assessed against said land for more than twenty-five years last past. There is no evidence whatever to sustain the finding of the court to the effect that it was stipulated and agreed between the parties that said partition fences were on the dividing lines between

their tracts of land. In fact, all of the evidence upon that question is directly contrary to that finding. Rhodes testifies positively that it was never stipulated and agreed or understood that said fences should be the boundary lines marking the land owned by each.

The witnesses for respondents were evidently testifying in regard to the east and west fence when they stated that that fence had been there since 1882 or 1883. That fence is not the one that was referred to as having been established by the shadow of the son of Rhodes, as an east and west fence could not be established in that way. It was the north and south line that was established by the shadow of the son, as it was established at noon. It is clear from the evidence that the north and south fence was built about fifteen to seventeen years ago—at least a fence was constructed on the line as established by the shadow of the son. There may have been a fence there prior to that time, as Mrs. Brown testified that a new fence had been built. The east and west fence no doubt had stood there many years, as Rhodes testified that a part of it was there many years ago and he "hooked on" to that, and extended the line. That fence, as shown by the evidence, was not on a straight line, and was from eight to twelve feet from the true line as established by government survey between said tracts of land.

The history of Idaho shows that very few of the farmers in this state when they first build their fences procure a surveyor to establish the correct boundary lines, and where a line is established, as the evidence shows the division lines were established in this case, with the understanding that when a survey was made and a true line ascertained the parties would place their fences thereon, it would be most unjust and inequitable to hold that they had consented and agreed to make that line the true boundary line, when there was no evidence to that effect introduced on the trial.

Counsel for respondents contend that all of the testimony shows that the division line fence has for more than twenty-five years—and perhaps thirty years—been acquiesced in as the boundary and division line between the respective prem-

ises. We find no evidence in the record that would justify such a statement or conclusion. Rhodes testified positively that said line was not acquiesced in as the true line, but that the understanding was that the fence should be placed on the true line when it was ascertained by survey.

It is also contended that the testimony of Rhodes and his son as to the agreement in regard to the construction of said north and south fence was completely impeached. We do not understand the evidence in that way. And as we understand it, the north and south fence was not constructed until some fifteen or seventeen years prior to the trial of the case, but that the east and west fence was constructed twenty-five or thirty years prior thereto.

It does not appear that improvements of any value, aside from the value of the fences, have been placed upon the land in dispute, and this case does not come within the rule that where one stands by and permits another to place valuable improvements upon his land and makes no objection thereto, the party who thus stands by is estopped from afterward claiming the land.

The facts of this case do not bring it within the rule laid down in the case of *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066. In that case this court in effect held that the evidence was sufficient to show that said fence was in fact on the correct line between the lots mentioned in that case. In fact, one witness testified in that case that said fence was built upon a line in accordance with the stakes of the original survey of said lots, and if that evidence was true, Urquides and his predecessors had paid taxes upon the lot claimed by him as established by the original survey. In the case at bar, it is conceded that said fence is not upon the true line between said tracts as established by the government survey. The decision in the Urquides case might have been different had it appeared that Urquides had within his inclosure a part of the lot claimed by Bayhouse and her predecessors as established by the original survey of said lots and had treated it as such.

As above stated, it is a well-recognized fact in this state that farmers in building their first division fences do not employ surveyors to establish the true lines, but build their fences with the understanding that when the true line is established, they will conform their fences to it. Such evidently was the understanding in this case as shown by the evidence. The evidence does not support the findings of the court to the effect that the line established by those division fences was understood and agreed to be the true line between said contiguous owners.

Counsel for respondent have cited a number of cases holding that where boundaries are doubtful, actual occupation for a number of years up to the line where a party supposes his land to extend, without any opposition from the adjoining proprietor, is strong presumptive evidence of the true line. But strong presumptive evidence is not enough to overcome positive evidence, and the positive evidence in this case shows the understanding was that when the true line was ascertained, the division fences would be conformed to it. Acquiescence in the location and maintenance of a line fence for a great length of time may be presumptive evidence of an agreement as to the true boundary line, but is not conclusive evidence, and will not overcome a positive agreement or understanding that after the true line is established, the fence will be made to conform to it. The evidence does not even tend to show that the defendant and his predecessors in interest ever acquiesced in the proposition that the fence was the true dividing line between their lands.

We agree with counsel for respondents that it is for the court below to decide upon the credibility of the witnesses, but the court, after rejecting the only positive evidence upon the issues, is not permitted to find in favor of the plaintiff without any evidence whatever, and on mere presumption.

In the case at bar, the respondents are endeavoring to have quieted in them the title to certain real estate, the legal title to which is in the appellant. They are endeavoring to procure the title under the rule of long acquiescence or adverse possession, and in order to succeed, they must establish their

right under the well-established rules of law by clear and satisfactory evidence, and that they have not done in this case.

The judgment will be reversed and the cause remanded for a new trial, with costs in favor of appellant.

Ailshie, J., concurs.