693 P.2d 1118

**Joe HERRMANN and Thelma Herrmann, husband and wife, Plaintiffs-Respondents-Cross Appellants,**

**v.**

**Arthur A. WOODELL and Neola L. Woodell, husband and wife; James A. Scharfe and Felipa M. Scharfe, husband and wife; Herbert T. Kerst, a single man; and, Jack K. Trone and Norma Trone, husband and wife, Defendants-Appellants-Cross Respondents.**

**No. 15067.**

Court of Appeals of Idaho.

Jan. 3, 1985.

Steven C. Verby, Sandpoint, for defendants-appellants, cross-respondents.

Steve Smith, Sandpoint, for plaintiffs-respondents, cross-appellants.

WALTERS, Chief Judge.

This is an appeal involving a dispute over title to a strip of land. The Herrmanns brought a quiet title action to establish that an existing fence is the boundary line between their property and property owned by the Woodells and the other appellants. The Herrmanns based their claim of ownership of the disputed property, an approximate eighteen-foot wide strip of land on the west side of the fence, on adverse possession or, alternatively, on agreed boundary by acquiescence. The district court entered judgment quieting title in the Herrmanns. The Woodells, and the other appellants who claimed legal title to portions of the disputed strip, have appealed. They primarily question whether the finding by the trial court—that the Herrmanns were owners of the disputed property under the theories of adverse possession and boundary by agreement—is supported by substantial, competent evidence. While we agree that the trial court erred in finding that all of the elements of adverse possession were established, we affirm the trial court's decision establishing the Herrmanns' ownership based on boundary by acquiescence or implied agreement.

The relevant facts are as follows. The parties stipulated that for at least twenty-five years before this action was brought there existed in the same location a fence between the property possessed by the Herrmanns and the property possessed by the appellants. In December, 1963, the Herrmanns had purchased a 160 acre parcel described by division of quarter sections rather than by metes and bounds, the description being:

> The east half of the southwest quarter and the south one-half of the northwest quarter of section 29, Township 56 North, Range 2 West of the Boise-Meridian, in Bonner County, Idaho.

In 1975, the Herrmanns filed a plat for the Herrmann Subdivision which included approximately 120 of their 160 acres. A road was constructed to serve the subdivision. Excluded from this subdivision plat was the Herrmanns' tract of approximately forty acres lying west of the proposed subdivision. Also excluded was the disputed strip of land between the east edge of the subdivision road and the fence. When the Herrmanns formed the subdivision they were advised by their surveyor that the quarter section line bisecting section twenty-nine from north to south, and which had been thought to be the fence line, was actually approximately eighteen feet west of the fence. Mr. Herrmann testified that he disagreed with the surveyed boundary line but decided to utilize the surveyed metes and bounds description for the subdivision plat filing and retain the land between the surveyed line and the fence as a "buffer zone" for the subdivision. Subsequently, the Woodells, after obtaining the preliminary results of their own survey of the disputed boundary, tore down portions of the fence in an effort to gain access to the Herrmann subdivision road.

■ The Woodells and the other appellants—contending they are the title holders of the disputed property—assert that the trial court's finding that the Herrmanns had established ownership of the disputed property by adverse possession is not supported by substantial, competent evidence. The trial court found that the Herrmanns met the burden of proof on the non-tax and the tax elements of adverse possession. Our review of the record convinces us that the court's findings regarding the non-tax elements are supported by substantial and competent evidence. However, the evidence is insufficient to establish that the tax requirement of I.C. § 5–210 had been satisfied. This section requires the adverse claimant to have paid taxes assessed upon the property claimed by adverse possession.

The record establishes that the Herrmanns paid all taxes assessed against their described property. As noted, the Herrmanns' property is described as the east half of the southwest quarter and the south one-half of the northwest quarter of section 29. The problem arises from the fact that the county assessor's records have never shown the eighteen-foot strip to

be part of the property assessed to the Herrmanns. Rather those records show the disputed property is part of land described as the northeast and southeast quarters of section 29. A deputy county assessor testified that taxes on the disputed strip were not assessed to the Herrmanns, rather, the taxes were assessed to the owners of the property to the east, which would have been the Woodells and the other appellants and their predecessors-in-interest.

There is no evidence in the record from which the trial court could have found that the Herrmanns actually paid taxes assessed against the disputed property. Therefore, adverse possession is not available to the Herrmanns because the Woodells and their predecessors-in-interest, who have record title, were assessed the taxes on the disputed strip.

■ However, the trial court also quieted title in the Herrmanns under a theory of "boundary by implied agreement." The doctrine of boundary by agreement does not require payment of taxes as a prerequisite. *Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981). The doctrine of boundary by agreement requires that there be a dispute, uncertainty or ignorance of the true boundary line which was resolved by an agreement establishing the boundary that would be recognized. *See Norwood v. Stevens*, 104 Idaho 44, 655 P.2d 938 (Ct.App. 1982). The existence of an agreement relating to a boundary must be established. Such an agreement could be established by direct evidence, or could be inferred from the conduct of the parties or their predecessors, including long acquiescence in an existing fence line. *O'Malley v. Jones*, 46 Idaho 137, 266 P. 797 (1928); 12 Am.Jur.2d BOUNDARIES § 88 (1964); R. CUNNINGHAM, W. STOEBUCK & D. WHITMAN, THE LAW OF PROPERTY, 768–69 (1984) (hereinafter referred to as "the Law of Property"). In this case, there is no direct evidence of an agreement resolving a dispute, uncertainty or ignorance over the true boundary. The evidence indicates that the fence has been in existence for so many

years that there are no witnesses available to establish that an actual agreement to fix an unknown or uncertain boundary line occurred.

■ However, "[s]uch an agreement may be presumed to arise between adjoining landowners where such right has been definitely defined by erection of a fence or other monument on the line followed by such adjoining landowners treating it as fixing the boundary for such length of time that neither ought to be allowed to deny the correctness of its location." *Edgeller v. Johnston*, 74 Idaho 359, 365, 262 P.2d 1006, 1010 (1953) (citations omitted). Further, "[f]rom the long existence and recognition of the original fence as the boundary, and the want of any evidence as to the manner or circumstances of its original location, the law presumes that it was originally located as a boundary by agreement ....." *Beneficial Life Insurance Company v. Wakamatsu*, 75 Idaho 232, 241, 270 P.2d 830, 835 (1954); *see also Hales v. Frakes*, 600 P.2d 556 (Utah 1979); *Baum v. Defa*, 525 P.2d 725 (Utah 1974). Furthermore, the period of acquiescence is regarded as competent evidence of the agreement. *Paurley v. Harris*, 75 Idaho 112, 268 P.2d 351 (1954). In addition, a specific time period of acquiescence is not required. *Trappett v. Davis, supra.* In this case, there is no evidence presented as to who constructed the fence or what function the fence was originally to serve. Acquiescence can then be relied upon to show that a settlement agreement must have taken place sometime in the past and was memorialized by the placement of the fence. *McKinney v. Kull*, 118 Cal.App.3d 951, 173 Cal.Rptr. 696 (1981); *Kraemer v. Superior Oil Co.*, 204 Cal.App.2d 642, 49 Cal.Rptr. 869 (1966).

■ There is substantial evidence that the Woodells and their predecessors-in-interest acquiesced for many years in the fence line being the boundary line. One of the Woodells' predecessors-in-interest testified that he considered the fence to be the boundary line between the two adjacent properties when he purchased the property

in 1951. Evidence was introduced showing that the State Highway Department had placed brass cap monuments along the fence line. These brass cap monuments were used in subsequent deeds concerning the property to describe the boundary line between the southwest and southeast quarters of section 29. Further, the Herrmanns and their predecessors had possessed, cultivated and grazed the land up to the fence. A witness for the Herrmanns testified that in 1927 and 1928, when he and his father leased the land, which is now owned by the Herrmanns, they grew hay and grazed horses right up to the fence line. In addition, the evidence indicates that the Woodells made no claims to the disputed property until the survey was completed. *See Sorenson v. Knott,* 320 N.W.2d 645 (Iowa App.1982); *Hausner v. Melia,* 212 Neb. 764, 326 N.W.2d 31 (1982) (for a discussion of acquiescence) and cases collected at 7 A.L.R.4th 53 (1981).

■ The Woodells claim the disputed property was once a road open to public use. Based on this assertion, they contend the fence was constructed by their predecessors-in-interest in order to keep animals from the roadway. This implies that the fence was erected as a barrier and not as a boundary to divide the adjacent properties. Therefore, if this assertion were proven, the presumption of an agreement would be overcome and a boundary by implied agreement or acquiescence could not be found. The Law of Property, *supra,* 769 n. 36. In support of this assertion, the Woodells introduced into evidence a warranty deed, dated in 1914, which conveyed the property in question. The deed reserved a right-of-way in the general location of the disputed property for roadway purposes. The Woodells further introduced into evidence a photograph taken in 1935 purporting to show a road along the disputed property. Another witness testified that there was a two-track road on the west side of the fence during the summers of 1948 and 1949, but knew nothing about such a road beyond those two summers.

■ However, on cross-examination, the witness who testified as to the 1935 photograph declared that because of the scale of the photograph he was unable to see a fence line adjacent to the purported roadway and was, therefore, unable to testify as to the location of the roadway. In addition, a witness for the Herrmanns disputed the presence of such a road. He testified that in 1927 and 1928 when he and his father leased the land, which is now owned by the Herrmanns, there was no road. Further, there was no evidence to show that the area of the purported roadway had not been plowed and cultivated in the years prior to 1934 or after 1949. The trial judge found from the evidence presented that the Woodells had failed to establish that the road was actually constructed or the location of the purported road. We will not disturb this finding. The evidence of any road running along the west side of the fence is inconclusive. Therefore, we hold that the evidence supports a finding of acquiescence. This acquiescence establishes a presumption, not refuted in this case, that a boundary agreement must have taken place at some point in the past. The Law of Property, *supra.*

■ An agreed boundary is binding upon a successor in interest of the seller, who purchased with notice of the agreement. *Paurley v. Harris, supra.* A boundary marked by a fence, with the land on the Herrmanns' side of the fence being grazed and cultivated would constitute notice. Mr. Woodell testified that he walked all over the property and noticed the barbed wire fence. Therefore, the Woodells were on notice of the agreed boundary. Accordingly, we hold in this case that the line marked by the fence constitutes the lawful boundary between the adjacent properties according to the doctrine of boundary by agreement.

■ The Woodells finally contend that the trial court erred by failing to apply the equitable doctrines of laches, equitable estoppel, quasi-estoppel, and waiver. It is claimed that since the Herrmanns did not include the disputed eighteen-foot strip of

property in their subdivision plat they cannot now claim legal title to it. It should first be noted that the defense of laches was raised for the first time on appeal, therefore, we will not consider it. *Fairchild v. Fairchild*, 106 Idaho 147, 676 P.2d 722 (Ct.App.1984). *See* I.R.C.P. 8(c).

For equitable estoppel to apply, the Herrmanns must have made a false representation or concealment of a material fact with actual or constructive knowledge of the truth. *Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983). For quasi-estoppel to be applicable, the Herrmanns must have previously taken an inconsistent position, with knowledge of the facts and their rights, to the detriment of the Woodells. *KTVB, Inc. v. Boise City*, 94 Idaho 279, 486 P.2d 992 (1971). Finally, for waiver to apply the Herrmanns must have voluntarily and intentionally relinquished their title to the disputed property and the Woodells must have acted in reliance upon such a waiver and altered their position. *Brand S Corp. v. King*, 102 Idaho 731, 639 P.2d 429 (1981).

However, no evidence was presented to establish these claims. The record indicates that the Herrmanns' actions were consistent and gave actual, objective notice of their continued claim to the disputed property. In fact the transcript shows that the Woodells met with the Herrmanns in an attempt to purchase an easement through the disputed property. This indicates the Woodells were aware that the Herrmanns claimed title to the disputed property. The record does not present evidence of any false representations, inconsistent conduct or relinquishment of title to the disputed property by the Herrmanns. They grazed and cultivated the disputed property, they maintained the fence and, on the subdivision plat, they made a notation of a five-foot buffer zone around the subdivision. From our examination of the record, we find no allegations of conduct on the part of the Herrmanns or their predecessors sufficient to invoke the doctrines of equitable estoppel, quasi-estoppel or waiver. *See Curry v. Ada County Highway District*, 103 Idaho 818, 654 P.2d 911 (1982).

The Herrmanns have cross-appealed the district court's failure to grant damages or other relief for the Woodells' destruction of part of the fence. However, the Herrmanns' original complaint did not allege that the Woodells caused the damage to the fence. The trial judge refused to allow a motion to amend the complaint at the start of the trial. The Herrmanns now request our Court to afford the Herrmanns an equitable remedy by requiring the Woodells either to replace, or to pay for the replacement of, the fence. Equitable relief should not be invoked to shape a decree which was not reasonably contemplated by the parties and which involves a substantial departure from the pleadings and legal theories relied upon by the parties. *Shumate v. Robinson*, 52 Or.App. 199, 627 P.2d 1295 (1981). Therefore, we will not grant equitable relief in this matter.

Judgment affirmed. Costs to respondents, Herrmann. No attorney fees on appeal.

BURNETT and SWANSTROM, JJ., concur.