794 P.2d 637

**Janet Perkin WELLS,
Plaintiff–Respondent,**

v.

**Sylvan D. WILLIAMSON, and Barbara A. Williamson, husband and wife; et al. Defendants–Appellants.**

No. 17531.

Court of Appeals of Idaho.

Aug. 30, 1989.

Review Granted Nov. 16, 1989.

Howard I. Manweiler and David D. Manweiler, Manweiler, Bevis & Cameron, Boise, for defendants-appellants. Howard I. Manweiler, argued.

Don Knickrehm and Rita Berry, Hawley, Troxell, Ennis & Hawley, Boise, for respondent. Rita Berry, argued.

WALTERS, Chief Judge.

The issue addressed in this case is whether adjacent landowners intended a fenceline to be treated as the boundary between their respective properties. Concluding that the evidence establishes they did, we affirm the district court's judgment quieting title in a disputed tract of land in favor of the respondent, Janet Wells.

The essential facts of this case are as follows. The disputed property, approximately 1.7 acres in size, is located in the northwest corner of lot 7, section 16, Township 4 North, Range 1 East, Boise Meridian, and is part of the original government survey of land on Eagle Island in Ada County. The configuration of the property is shown in the following illustrative sketch.

As is apparent, the property is triangular in shape: the western boundary (from point *A* to point *B*) runs generally north to south and is approximately 250 feet in length; the northern boundary (point *C* to point *A*) runs generally east to west and is approximately 500 feet in length; and the southern boundary, which connects the western and northern boundaries, runs southwest to northeast (point *B* to point *C*) and is approximately 550 feet in length. Both the western and southern boundaries are fenced; the northern boundary constitutes the original meander line of the Boise River, along which now runs a tributary of the river, Pine Slough. The southern fenceline (point *B* to point *C*) is the disputed boundary.

In 1967, Sylvan and Barbara Williamson (Williamson) purchased lot 7 (containing the disputed parcel) and lot 2, lying directly

to the north of lot 7. According to Williamson, the southern fenceline existed at the time the property was acquired, and evidently was used by the former landowner to keep livestock from ranging into Pine Slough. In 1969, Williamson sold lot 2 to Muriel Craine through a real estate exchange agreement. The exchange agreement did not specify whether the disputed property was transferred as part of the sale, referring only to a conveyance of lot 2 from Williamson to Craine. As part of the exchange agreement, Craine constructed a fence along the boundary of Pine Slough east of the disputed property. This additional fenceline is connected to, but does not form, the boundary of the disputed property as depicted above in the illustrative sketch.

Soon after executing the exchange agreement, Craine moved a mobile home onto the disputed property with Williamson's approval. According to Williamson, this was done as a matter of necessity; at the time of the sale, Craine was unable to move the mobile home onto lot 2 due to flooding in Pine Slough. Shortly thereafter, Craine also constructed a fence along the western boundary of the disputed property. This fence was connected by a gate to the southern fenceline. According to Williamson, Craine thereafter treated the southern and western fencelines as the boundaries between her property and that of Williamson. Although Williamson stated that he did not treat the fencelines as the boundary between his property and that of Craine, he did declare that, at the time Craine purchased the property, no one knew the exact location of the disputed property boundaries.

Craine eventually sold her property to Wells in 1973. According to Wells, at the time of the sale, she "walked" the property with Craine, who indicated that the southern and western fencelines were the property boundaries of lot 2. Wells subsequently replaced the mobile home which Craine had placed on the disputed property with one of her own, and has since made

further improvements on the property. The property has been occupied continuously by lessees of Wells since she acquired it in 1973.

In 1984, Wells had the disputed property surveyed. Contrary to her understanding with Craine, the survey indicated that the disputed property was actually part of lot 7 rather than lot 2; the northern boundary of the disputed property being the true dividing line between lots 2 and 7. Wells informed Williamson of this discrepancy and apparently attempted to resolve the ownership issue. However, Williamson claimed ownership of the disputed property. Wells then initiated this action to resolve the boundary dispute and establish a right-of-way access to lot 2. On the parties' cross-motions for summary judgment, the district court entered a judgment quieting title to the disputed property in favor of Wells. This appeal by Williamson followed.

Initially, we note the standards governing motions for summary judgment. Such a motion is proper if, based upon the pleadings, depositions, affidavits and admissions on file, there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. I.R. C.P. 56(c). Generally, a party opposing summary judgment is entitled to favorable inferences from the underlying facts. However, where opposing parties both move for summary judgment on the same evidentiary facts and on the same issues and theories, the parties effectively have stipulated that there is no genuine issue of material fact; the judge is therefore entitled to draw the inferences from the facts he or she deems most probable. *Anderson v. Farm Bureau Mutual Insurance Company of Idaho*, 112 Idaho 461, 732 P.2d 699 (Ct.App.1987). We will accept the judge's factual determinations where they are reasonably supported by the record. *Id.*

In the present case, the district court quieted title in favor of Wells based upon the theory of boundary by acquiescence or implied agreement.[1] To estab-

---

1. The district court also held that Wells was entitled to the disputed property under the alter-

native doctrine of adverse possession. We need not address this issue, however, because we

lish property ownership under this doctrine, there must be a disputed boundary, uncertainty or ignorance of the true boundary line, and an agreement establishing a boundary that is recognized between the parties. *Herrmann v. Woodell,* 107 Idaho 916, 693 P.2d 1118 (Ct.App.1985). The payment of property taxes by the party seeking possession of the disputed land is not required. *Trappett v. Davis,* 102 Idaho 527, 633 P.2d 592 (1981). However, it does require that the parties agree to a boundary. Such an agreement may be established by direct evidence, or it can be inferred from the conduct of the parties or their predecessors in interest, including long acquiescence in an existing fenceline, especially where "adjoining landowners treat[ed] it as fixing the boundary for such length of time that neither ought to be allowed to deny the correctness of its location." *Edgeller v. Johnston,* 74 Idaho 359, 365, 262 P.2d 1006, 1010 (1953).

■ Based upon our review of the record, we conclude, as a matter of law, that Wells was entitled to the disputed property under the doctrine of boundary by acquiesence or agreement. The undisputed facts of this case indicate that, through Williamson's own admission, the property boundaries of the disputed property were not known to the parties at the time that lot 2 was sold to Craine. Furthermore, although the parties disagree as to whether there was ever an express understanding fixing the boundaries to the property in question, it is undisputed that Williamson stood idly by for fifteen years while first Craine then Wells occupied and made improvements upon the property. We conclude that the district judge was free to infer from these facts that Williamson had acquiesced in the establishment of the boundary between the properties.

In reaching our conclusion, we disagree with Williamson's contention that there are disputed facts pertaining to establishment of the southern fenceline—not considered by the district judge—which preclude summary judgment. For instance, Williamson claims that, after selling lot 2 to Craine, he continued to use the southern fenceline as a barrier to keep his cattle from entering Pine Slough, rather than recognizing it as the property boundary. Williamson also submits that, contrary to the district judge's conclusion, there was never an express agreement between the parties regarding the property boundaries; Williamson asserts that the only boundary agreed upon by the parties was the fenceline adjacent to the disputed property which was constructed by Craine pursuant to the exchange agreement. However, resolution of any issue pertaining to how the property boundaries were originally established is immaterial, due to Williamson's long acquiescence to the disputed property boundary. In this regard the "facts" are undisputed— Williamson permitted Craine and Wells to occupy the site without protest. From this fact, the district judge surmised that Williamson had agreed to the boundary between the properties. We see no reason to disturb the district court's conclusion.

Furthermore, we place no emphasis on the fact that Williamson has paid the taxes on the disputed property since he acquired it in 1967. Unlike adverse possession cases, payment of taxes does not enter into our analysis under the theory of boundary by agreement. *Trappett v. Davis, supra.*

■ We also disagree with Williamson's contention that, in Idaho, acquisition of property through boundary by agreement is limited only to "narrow strips" of land. *E.g., Broadhead v. Hawley,* 109 Idaho 952, 712 P.2d 653 (Ct.App.1985) (doctrine applied to ten-foot strip of land). We find nothing in our decisions, nor the decisions of the Idaho Supreme Court, which suggest that application of this doctrine should be arbitrarily limited by the particular size or configuration of the lot in question.

■ Finally, we consider Wells' claim for attorney fees in responding to Williamson's appeal. Attorney fees are appropriate where we are left with an abiding belief

conclude that the district judge's judgment may be affirmed based upon the doctrine of bound-

ary by implied agreement.

**52**

that an appeal has been brought or defended frivolously, unreasonably or without foundation. I.C. § 12–121; *Matter of the Estate of Irwin*, 104 Idaho 876, 664 P.2d 783 (Ct.App.1983). In this case, Williamson has asked us to do nothing more than to second-guess the judgment of the district court based upon conclusory assertions which are immaterial to the case at hand. Furthermore, the narrow focus of this appeal has been the application of settled law to undisputed facts. There has been no showing that the district court either abused its discretion in reaching its factual findings, nor misapplied the law to the facts thus found. We therefore conclude that Williamson's appeal was brought unreasonably and without foundation. Attorney fees are awarded to Wells in an amount to be determined under I.A.R. 41(d).

The judgment of the district court, quieting title to the disputed property in favor of Wells, is affirmed. Costs and attorney fees to respondent, Wells.

HUNTLEY, J. Pro Tem., fully concurred prior to his resignation August 7, 1989.

WINMILL, J. Pro Tem., concurs.