819 P.2d 569

Philip **DREHER** and Pauline Dreher, husband and wife, and Dean Dreher and Jane Doe Dreher, husband and wife, Plaintiffs–Counterdefendants–Respondents–Cross Appellants,

v.

Neal K. **POWELL** and Diane Powell, husband and wife, Defendants–Counterclaimants–Appellants–Cross Respondents,

and

John Does I through X, Defendants–Counterclaimants.

No. 18172.

Court of Appeals of Idaho.

Sept. 23, 1991.

Petition for Review Denied Nov. 27, 1991.

Stufflebeam & Ferrin, Blackfoot, for defendants-counterclaimants-appellants-cross-respondents. Scott D. Stufflebeam argued.

Imhoff & Lynch, Idaho Falls, for plaintiffs - counterdefendants - respondents - cross -appellants. Dwight E. Baker argued.

SWANSTROM, Judge.

This case involves the location of a boundary line. The issues on appeal are whether the district court's determination that there was a boundary by agreement is supported by substantial evidence and whether the district court correctly determined the amount of damages. We affirm.

Philip, Pauline, Dean and Jane Dreher are neighbors of Neal and Diane Powell.

The Powells' real property includes forty acres used for grazing cattle and which have been in the family since 1916. The Drehers farm a forty-acre tract to the north of the Powells, which they are purchasing from Basil Poulson. When the Drehers moved onto their property in 1979, it was separated from the Powells' property by an old fence which has existed since the early 1900's.

In 1979, the Drehers changed their irrigation system and decided to relocate part of an irrigation ditch southward, towards the fence. Shortly thereafter, a part of the old fence became covered with sand and was no longer an effective barrier between the properties. Consequently, the Powells' cattle began to cross over onto the Drehers' property. There is evidence in the record indicating that the Drehers' property was within a herd district and that the Drehers had the legal duty to maintain the fence on their south boundary. The parties had some discussions about rebuilding the fence.

In the early 1980's, the Powells had a surveyor locate the boundary line between the two properties so that the new fence could be placed on the quarter-mile-long boundary line. Neal Powell testified that he believed he had an agreement with the Drehers to rebuild the fence in this manner; the Powells would build the fence and the Drehers would pay for the materials. The survey revealed, for the first time, that the old fence was several feet south of the legal boundary. However, before the Powells could rebuild the fence, Dean Dreher removed all of the stakes marking the boundary line's true location.

The Powells' further efforts to reach some agreement with the Drehers failed. In 1987, the Powells had the surveyor reestablish the location of the true boundary line. This survey showed that the old fence was 9.00 feet south of the boundary line at the southwest corner of the Drehers' property and 13.50 feet south of the boundary line at the Drehers' southeast corner. Neal Powell rebuilt the fence on the true boundary line. In doing so, he filled in part of an irrigation ditch which had straddled the true boundary line. He rebuilt this part of the ditch on the Drehers' property, north of the new fence.

The Drehers filed this action in February, 1988, seeking to quiet title to the disputed strip of property south of the legal boundary line. They alleged that due to the long acquiescence of the Powells and their predecessors to the old fence, it had become the boundary by reason of the doctrine of "boundary by agreement or acquiescence." The Drehers also claimed damages for the loss of crops they could have grown on the disputed property. After a bench trial, the district court found in favor of the Drehers, holding that there was a boundary by agreement, where the old fence was located. The court ordered that the Powells restore the irrigation ditch to its former location and that a new fence be built where the old fence had existed. The court also awarded the Drehers $1,500 in damages for crop loss. The court denied a claim by the Powells that they had lost the use of the pasture because of the Drehers' failure to maintain the old fence. The Powells appeal, arguing the district court erred by finding a boundary by agreement along the old fence line. The Drehers cross-appeal, contending the damage award for their crop loss was insufficient.

■ We turn first to the district court's determination that there was a boundary by agreement. This issue presents us with a mixed question of law and fact. *See, e.g., Herrmann v. Woodell,* 107 Idaho 916, 693 P.2d 1118 (Ct.App.1985). Therefore, we defer to the district court's findings if they are supported by substantial evidence, but we freely review the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Staggie v. Idaho Falls Consol. Hospitals, Inc.,* 110 Idaho 349, 715 P.2d 1019 (Ct.App. 1986).

■ The doctrine of boundary by agreement is well established in Idaho. The doctrine is premised upon the assumption that long acquiescence between neighbors concerning the boundary line between their property ought to preclude "a controversy that will involve rights that have been un-

questioned for a generation." *Bayhouse v. Urquides*, 17 Idaho 286, 298, 105 P. 1066, 1070 (1909). Our Supreme Court later explained the doctrine in these words:

> Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds ... and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties.

*Downing v. Boehringer*, 82 Idaho 52, 56–57, 349 P.2d 306, 308 (1960).[1]

■ The elements of a boundary by agreement include an uncertain or disputed boundary, and a subsequent agreement fixing the boundary. *Wells v. Williamson*, 118 Idaho 37, 794 P.2d 626 (1990). The agreement need not be express. Rather, it may be implied by the surrounding circumstances and conduct of the parties. *Edgeller v. Johnston*, 74 Idaho 359, 262 P.2d 1006 (1953). Moreover, such an agreement is presumed to arise between neighbors:

> [W]here such right has been definitely defined by erection of a fence ... followed by such adjoining landowners

treating [the fence] as fixing the boundary for such length of time that neither ought to be allowed to deny the correctness of its location. [Citations omitted.]

74 Idaho at 365, 262 P.2d at 1010 (1953). Further,

> In situations where no express agreement has been made, our cases have viewed a long period of acquiescence by one party to another party's use of the disputed property merely as a factual basis from which an agreement can be inferred.

*Wells v. Williamson*, 118 Idaho at 41, 794 P.2d at 630.

■ Here, we are asked to examine whether the district court correctly concluded that the boundary between the Drehers' property and that of the Powells was unknown and uncertain or in dispute, and that the parties subsequently agreed, by their conduct, where the boundary would be. We start by noting that there was no evidence that the parties or their predecessors in interest ever expressly agreed that the fence line would be the boundary line between the two properties. Also, no conclusive evidence could be offered showing when the fence was first erected, or how it came to be erected a few feet south of the true boundary line.

The district court found that the fence was erected in approximately 1900. Mr. Poulson, Dreher's predecessor, testified that when he came onto the property in 1942 the existing fence was "old." Other evidence showed that in 1919 a herd district was created which encompassed the property now owned by Dreher. Because by law the herd district was required to be enclosed by fences along its boundaries, the Powells suggest that the fence must have been constructed at that time as part of the

---

1. This statement of the doctrine has been repeated in numerous "boundary by agreement" cases. *See, e.g., Wells v. Williamson*, 118 Idaho 37, 794 P.2d 626 (1990); *Duff v. Seubert*, 110 Idaho 865, 719 P.2d 1125 (1985); *Berg v. Fairman*, 107 Idaho 441, 690 P.2d 896 (1984); *Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981); *Gameson v. Remer*, 96 Idaho 789, 537 P.2d 631 (1975); *Hyde v. Lawson*, 94 Idaho 886, 499 P.2d 1242 (1972); *Fry v. Smith*, 91 Idaho 740, 430 P.2d 486 (1967). Four Idaho Court of Appeals cases have also dealt with the boundary by agreement doctrine set forth in *Downing. Broadhead v. Hawley*, 109 Idaho 952, 712 P.2d 653 (Ct.App.1985); *Herrmann v. Woodell*, 107 Idaho 916, 693 P.2d 1118 (Ct.App.1985); *Norwood v. Stevens*, 104 Idaho 44, 655 P.2d 938 (Ct.App.1982); *Wells v. Williamson*, 118 Idaho 48, 794 P.2d 637 (Ct.App.1989) *aff'd* 118 Idaho 37, 794 P.2d 626 (1990).

south boundary of the district. In any event, no one disputed that the fence was maintained in its original location for at least sixty years. No evidence was offered to show that either of the parties or their predecessors prior to 1982 had actual knowledge of the location of the true boundary line, or that the fence was not on that line. In absence of any other explanation for the discrepancy in the location of the fence, the district court inferred that the predecessors of Dreher and Powell "were uncertain or did not know the location of the boundary line at the time the original fence was erected...." In the court's analysis, this starting point, which was followed by about sixty years of acquiescence by the owners, led to the court's conclusion that the fence had been established as the boundary by agreement. The court's reasoning and its conclusion are consistent with this Court's decision in *Herrmann v. Woodell,* 107 Idaho 916, 693 P.2d 1118 (Ct.App.1985). We must sustain the trial court's finding that the parties and their predecessors treated the fence line as the boundary line from the time the fence was erected to 1982.

We also find this case to be remarkably similar to the recent case of *Wells v. Williamson,* 118 Idaho 37, 794 P.2d 626 (1990). In *Wells,* the true boundary line between two pieces of real property (Government Lots 2 and 7) was a meander line of the Boise River as it was located in the original government survey. Wells's predecessor bought Lot 2 from Williamson, but the predecessor moved her mobile home onto the disputed property, which was actually a part of Lot 7. After Wells purchased Lot 2 in 1973 she also occupied the mobile home on the disputed property and made further improvements to this property. The location of the meander line was unknown to the parties until Wells had the disputed property surveyed in 1984. Until that time, she had assumed an existing fence along the southerly side of the disputed property was the (meander line) boundary dividing her property from Williamson's property. Wells and her predecessor had been allowed to possess and use the disputed property for nearly twenty years.

In that period, Williamson never registered a complaint or claimed the property was his. Upon these facts, the Supreme Court held the parties' "uncertainty" as to the true boundary had been shown. This uncertainty, coupled with Williamson's long acquiescence in the possession and use of the disputed property by Wells and her predecessor, was sufficient evidence of a "boundary by agreement."

The Powells do not disagree with the law and the decision reached in *Wells.* However, they argue that in this case, unlike in *Wells,* the true boundary line should not be viewed as "unknown, uncertain or in dispute." The Powells argue that where, as here, the true boundary line of two adjoining properties is defined by a legal subdivision line that has been permanently established by an official survey, monumented, and made a part of the public record, and the line can be readily located on the ground by reference to these records and monuments, it cannot be said that the boundary is "unknown, uncertain or in dispute."

The common boundary line between the Drehers' property and the Powells' property is a straight East–West line, a quarter of a mile long. It is a segment of the line which extends from the west quarter corner of Section 29 to the east quarter corner of Section 29, thereby dividing the section into north and south halves. When the area was originally surveyed by government surveyors in 1877, this line was surveyed and monumented at either end in accordance with the then-existing official survey manual. For more than a century, the 1877 survey plat and surveyor's notes have been recorded as part of the public records.

The "East–West quarter section line" established by the 1877 survey has always defined the "legal boundary" between the Drehers' property on the north and the Powells' property on the south of the line. We can say this because each piece of property involved in this dispute has always been described in reference to the official survey. For example, the Drehers' forty acres have always been described as

the SW¼NE¼ of Section 29, Township 2 South, Range 36 East, B.M. The adjoining property of the Powells has always been described as the NW¼SE¼ of Section 29.

The Powells contend that the Idaho Supreme Court has generally distinguished this type of case from others where there has never been such a recorded survey of the common boundary. They rely particularly on the following language in *Fry v. Smith*, 91 Idaho 740, 430 P.2d 486 (1967):

> As to the title claimed by acquiescence or agreement in the settlement of uncertain and disputed boundary, defendant's proof also failed. The evidence showed that the south meander line on the north bank of the South Fork of the Payette river, between Sections 10 and 11, was in place and its location was known to the respective parties at all pertinent times. There was evidence that the parties did not know of the exact location of the north section corner common to Sections 10 and 11, but there was no evidence that a survey following the government field notes would not have established its location. *Under these circumstances the location of the section line running north and south between Sections 10 and 11 was not unknown, uncertain or doubtful....* Likewise, a parallel line running north and south 100 feet east of the section line and describing the westerly 100 feet of Lot 6, Section 11, could not be said to be unknown, uncertain or doubtful. [Emphasis added; citations omitted.]

91 Idaho at 741–42, 430 P.2d at 487–88. The Powells urge that we apply this reasoning to the present case. They argue that certain language of our decision in *Norwood v. Stevens*, 104 Idaho 44, 655 P.2d 938 (Ct.App.1982) is inconsistent with *Fry* and ought to be overruled. On the other hand, the Drehers contend that much of the above quoted language in *Fry* is

dicta. We agree. As the Court noted in *Fry*, the parties had *actual* knowledge of the location of the surveyed meander line (section line) between Sections 10 and 11. Moreover, the evidence clearly showed there was no agreement to treat the fence as the boundary.

We have also considered the case of *Gameson v. Remer*, 96 Idaho 789, 537 P.2d 631 (1975), and we are not convinced that it requires the result urged by the Powells. The *Gameson* decision also suggests that when the parties orally agreed to "divide" a lot in a subdivision, they had actual knowledge where the lot lines were located and, thus, as the Court said, the "uncertainty" element necessary for a boundary by agreement was lacking. *See also Berg v. Fairman*, 107 Idaho 441, 690 P.2d 896 (1984).

From our review of the cases, we are not persuaded that the Supreme Court has adhered to the rule which the Powells urge we apply in the present case. The Supreme Court has not consistently recognized two categories of cases: one where the boundary falls on a recorded official survey line, and another where the boundary lies away from such a line.[2] Accordingly, we will not decide this case on the basis of the "rule" urged by the Powells. We must, nevertheless, recognize that the Powells' arguments are not without some merit.

It is true that people tend to regard long-existing fences as legal boundaries. However, it must also be recognized that many such fences may have been erected for practical purposes without any foreseen necessity for a legal survey to establish the line precisely. In the very early case of *Brown v. Brown*, 18 Idaho 345, 110 P. 269 (1910), our Supreme Court said:

> As above stated, it is a well-recognized fact in this state that farmers building

---

**2.** The *Wells* case, for example, does not fall into the "other category," as the Powells suggest. In *Wells*, the true boundary line, the location of which was "unknown" to the parties, was the original meander line of the Boise River, dividing Government Lot 2 from Lot 7. That line was established by official government survey and was a matter of record when Lot 2 was sold by Williamson to Wells' predecessor in 1973. At that time, presumably, the meander line could have been easily located on the ground by following the official survey. The 1984 survey readily disclosed the true location of this line. If the Powells' argument had been made and accepted in the *Wells* case, the outcome there would have been different.

their first division fences do not employ surveyors to establish the true lines, but build their fences with the understanding that when the true line is established, they will conform their fences to it. . . .

18 Idaho at 357, 110 P. at 273. Thus, it should be recognized even today that an important part of any ancient agreement to construct a fence in a certain location might have contained "the understanding that when the true line is established, they will conform their fences to it." This critical "understanding" can be easily lost in the distant past by witnesses who know or who can recall only that the fence was built pursuant to an "agreement" of former property owners.

■ In recognizing the reliance people often place on fences to denote boundaries, courts should not overlook the equally important reliance that people place on legal descriptions in public records to define the boundaries of ownership. A description used and relied upon repeatedly by many persons—in addition to the owners of the property—for perhaps a century or longer, should not be disregarded lightly to accommodate the theory of boundary by oral agreement.

Having briefly noted our concern for legitimate arguments raised by the Powells, we are constrained nevertheless by precedent to uphold the conclusion of the trial court in the present case that the fence line was established as a boundary by agreement.

■ We now turn to the damage issue. In the court below, the Drehers sought approximately $8,000 in damages for crop loss, but were awarded $1,500 because the court determined that the Drehers had failed to mitigate their loss. By their cross-appeal, the Drehers challenge this award.

Whether a party has failed to mitigate damages is a factual issue. *See, e.g., Tippett v. Bayman,* 105 Idaho 744, 672 P.2d 1074 (Ct.App.1983) (determination of damages is in the province of the trial court). Therefore, we will defer to the district court's findings if they are supported by substantial, although conflicting, evidence.

*Rasmussen v. Martin,* 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). The record suggests the Drehers could have grown crops on additional property available to them throughout the controversy, but elected not to. We believe this evidence supports a finding of failure to mitigate. Therefore, we will not disturb the damage award.

In conclusion, we affirm the district court judgment. No costs or attorney fees on appeal.

WALTERS, C.J., and SCHILLING, J. Pro Tem., concur.