NICOLA ET AL., APPELLANTS, *v.* BURNETTE, APPELLEE.

---

(No. 3890—Decided October 30, 1985.)

*James L. Blaszak,* for appellants.
*Thomas J. LaMarca,* for appellee.

GEORGE, P.J. Plaintiffs-appellants, Robert and Tressie Nicola, appeal the order of the trial court granting summary judgment to the defendant-appellee, Carol Burnette. Early in 1984, Burnette's husband, Jack Greentree, entered into a real estate purchase agreement with the appellants, who were the sellers of property and a business. The agreement called for $100 earnest money as an initial deposit, the payment of $59,000 in cash, and the assumption of a $120,000 mortgage.

Greentree made the initial deposit but did not possess the funds necessary to make the cash payment at the time of the signing of the agreement. He told Burnette that he would be getting the funds shortly and asked Burnette if she would draw him a check on her account so that he could make the payment. He told her that he would deposit the expected funds in her account as soon as they arrived. Burnette signed a check, leaving it blank as to the amount, the payee, and the date, and gave it to Greentree. Greentree took the check, dated it, and made it payable to the seller's escrow agent for $59,000. On the lower left hand corner of the check he noted "Down payment on Imperial."

When the escrow agent presented the check for payment it was dishonored by the drawee for insufficient funds. Unable to get Greentree to make good on the check, the appellants sued him and were awarded $30,000 for breach of contract. The appellants were unable to collect their judgment. They then sued Burnette, attaching to their complaint a copy of the check Burnette gave to Greentree and the real estate purchase agreement.

Burnette moved for summary judgment on the grounds that she was not a party to the underlying agreement. The appellants moved for summary judgment on the basis of Burnette's contractual liabilities arising from the instrument itself. Burnette was granted summary judgment and this appeal followed. The court affirms.

Assignments of Error

"I. The trial court erroneously denied [*sic*] to grant a summary judgment in favor of the plaintiffs-appellants and against the defendant-appellee.

"II. The trial court erroneously found that the defendant-appellee was entitled to judgment as a matter of law and erroneously granted a summary judgment in favor of the defendant-appellee on the plaintiffs-appellants' complaint."

Both claimed errors were argued as one by the appellants and will, therefore, be addressed together on appeal. Appellants contend that they have established a prima facie case of contractual liability on the instrument which Burnette gave to Greentree. Appellants argue that they have established themselves as holders of a negotiable instrument and are entitled to judgment as a matter of law. They further argue that the appellee's defense that she was never a party to the underlying agreement, and therefore received no consideration for the issuance of the check, is inconsequential.

Appellants correctly point out that one who signs a negotiable instrument and sets it adrift on the sea of commerce promises to subsequent holders of that

instrument that it will be paid according to its tenor. R.C. 1303.49(B). It is also true that one who draws an incomplete check and gives it to someone with either express or implied authority to fill in the blanks is likewise still liable on that instrument. R.C. 1303.14. Thus, by signing the check and giving it to Green-tree, Burnette incurred contractual liability on the instrument. The issue presented by this appeal, however, is whether appellants are holders in due course, or for that matter whether they have even attained the status of holders of the instrument. The answer to this question is important because it will determine the number of defenses available to Burnette, and whether summary judgment was properly granted in her favor.

In order to be a holder in due course one must first be a holder. A "holder" is defined in R.C. 1301.01(T):

" 'Holder' means a person who is in possession of a document of title of an instrument or an investment security drawn, issued, or indorsed to him or to his order or to bearer or in blank."

In the instant case the instrument was drawn by Burnette, and made payable to the escrow agent by Green-tree. The designation of the payee did not contain any reference to the appellants, nor did it note that the escrow agent was accepting the payment on behalf of the appellants. R.C. 1303.16. Thus, the instrument was not negotiated to the appellants, but was instead issued to the escrow agent, Consolidated Title Company. In spite of this fact, appellants contend that the escrow agent was merely the "nominal" payee of the instrument, and that the intended or actual payees were the appellants.

Appellants ask this court to recognize them as the actual payee of the instrument. In support of their request appellants cite the case of *Botzum Bros. Co.* v. *Brown Lumber Co.* (1957), 104 Ohio App. 507 [5 O.O.2d 234]. *Bot-*

*zum* did not involve the interpretation of a commercial law statute. The determination of who was the actual payee in that case was only important in construing the requirement of a federal housing regulation. That federal regulation required "payees" of construction mortgages to obtain a certification of completion prior to the disbursement of any loan funds. The *Botzum* decision is limited to its particular circumstances: the interpretation of a federal regulation.

The instrument in question here was order paper made to the order of the escrow agent. To be properly negotiated it must not only have been delivered, but properly indorsed by the escrow agent. R.C. 1303.23(A). The escrow agent indorsed the check when it presented it for payment. This indorsement converted the instrument into bearer paper. After the instrument was dishonored by the bank, the escrow agent gave it to the appellants. This was a delivery. Thus, the instrument was negotiated to the appellants, and they did become holders. R.C. 1303.23(A).

However, the appellants accepted Burnette's check with notice that it had been dishonored. Notice of dishonor precludes a holder in due course status. R.C. 1303.31(A)(3). Appellants also failed to attain holder in due course status because they never gave value for the instrument. The real estate purchase agreement signed by the appellants was an executory agreement, and it remained executory at all times. An executory promise or agreement is a promise to do something in the future, and is not considered value for purposes of establishing holder in due course status. Brady, Bank Checks (5 Ed. Cum. Supp. 1985) 6-4, Section 6.5. In *Maplewood Bank & Trust Company* v. *F.I.B., Inc.* (1976), 142 N.J. Super. 480, 362 A. 2d 44, the seller of a restaurant business sued the buyer on an instrument the buyer had issued to the buyer's at-

torney. Both parties had entered into a real estate purchase agreement which fell through prior to the closing. The court in that case denied holder in due course status to the seller finding that the executory agreement did not constitute value given in exchange for the check.

Because the appellants were not holders in due course they were subject to Burnette's defense that she was never a party to the underlying agreement. This defense was not opposed on summary judgment, and the trial court properly granted summary judgment in Burnette's favor. The assignments of error are overruled and the decision of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY and QUILLIN, JJ., concur.