THE BOTZUM BROS. CO., APPELLEE, *v.* THE BROWN LUMBER CO. ET AL., APPELLEES; SECURITY FEDERAL SAVINGS & LOAN ASSN., APPELLANT AND CROSS-APPELLEE; SEBASTIAN ET AL., APPELLEES AND CROSS-APPELLANTS.*

*Motion to certify the record overruled, November 6, 1957.

(No. 4666—Decided May 1, 1957.)

*Mr. M. B. Johnson, Mr. H. H. Johnson,* and *Messrs. Buckingham, Doolittle & Burroughs,* for appellant and cross-appellee, Security Federal Savings & Loan Association.

*Mr. Paul A. Weick,* for appellees and cross-appellants, Orval D. and Patricia A. Sebastian.

STEVENS, J. This appeal on questions of law, by the Security Federal Savings & Loan Association of Cleveland, challenges the propriety of the judgment of the trial court, wherein it determined that the mechanics' liens of the Botzum Bros. Company, The Brown Lumber Company, and The J. P. Loomis Concrete & Supply Company, on the property of Orval D. Sebastian and Patricia A. Sebastian, located on Hilbish Avenue in the city of Akron, were valid liens; and that the mortgage, and the notes which it purportedly secured, held by the Security Federal Savings & Loan Association of Cleveland, should be cancelled, and its cross-petition seeking foreclosure of the mortgage should be dismissed.

By way of cross-appeal, Orval D. and Patricia A. Sebastian assert that the trial court erred in not entering judgment for the Sebastians for $307.14, the amount paid by them upon the notes

held by Security Federal Savings & Loan Association of Cleveland.

On the subject of the validity of the liens filed by plaintiff, and the cross-petitioning defendants The Brown Lumber Company and The J. P. Loomis Concrete & Supply Company, which constitutes appellant's fourth assignment of error, there is no dispute as to the legal steps taken to secure such liens, nor are the amounts of the several liens in dispute; there is, likewise, no question that the materials furnished by the lien claimants were used in the construction of the residence building on the Hilbish Avenue property of the Sebastians.

The evidence contained in this record shows that on June 21, 1954, David H. Bremson, doing business as ''Nu Homes Associates,'' entered into an agreement in writing (plaintiff's exhibit 13) with Orval D. Sebastian and Patricia Sebastian, whereby Nu Homes Associates agreed ''to furnish all materials and labor necessary for the work (specified below) on premises located at No. Lot 2, Tract 2, Hilbish Avenue, Akron.''

Under ''Specifications,'' the following appears: ''Furnish all necessary material and draw blueprints and plans for construction of 26 x 55 home as per attached specifications.''

Thereafter, appears an itemized list of the material to be furnished by Nu Homes.

The written contract which, in its opening printed provision, states: ''Nu Homes Associates agree to furnish all materials and labor necessary for the work (specified below),'' in its ''specifications'' provides only for the furnishing of blueprints and plans and the material therein enumerated. There is no provision for the furnishing of labor by Nu Homes in the ''specifications.''

There is thus an inconsistency between the printed portion of the contract and the handwritten ''specifications,'' inserted at the time the contract was executed, on the subject of Nu Homes furnishing labor. In such situation, the written portion of the contract controls, and the contract must be held to exclude the providing of labor by Nu Homes. *Farmers Natl. Bank* v. *Delaware Ins. Co.,* 83 Ohio St., 309, paragraph 1 of syllabus, 94 N. E., 834.

The application of the above rule is buttressed by the testi-

mony received because the contract was ambiguous; all of which testimony is to the effect that the Sebastians were to furnish all the labor necessary to construct the home, and Nu Homes was to furnish only the blueprints, plans and material as specified.

The provisions of Section 8310, General Code (now Section 1311.02, Revised Code), set forth the persons who and the conditions under which they may acquire liens.

DeWitt, in his work, "Ohio Mechanics' Liens," at Section 14, abridges the statute as follows:

"Reduced to its lowest terms, the statute provides that *every person who* does work or *furnishes* machinery, *material,* or fuel, for constructing or altering certain structures or improvements, *by virtue of a contract,* express or implied, *with the owner* of any interest in real estate, or his authorized agent, *and every* subcontractor, laborer, or *materialman furnishing* labor or *material* or fuel, *to each original contractor or any subcontractor,* in carrying forward such contract, *shall have a lien.*" (Italics ours.)

It is not claimed by plaintiff, or the other (the two cross-petitioning) lien claimants, that they furnished material under a contract, express or implied, with the owners of the real estate, Sebastians.

And it cannot be successfully asserted that any of the mechanics' lien claimants fall within the statutory definition of "subcontractor," Section 1311.01 (D), Revised Code, or that they furnished material to an original contractor, or to any subcontractor.

The evidence shows that the mechanics' lien claimants sold their material to Bremson, d.b.a. Nu Homes Associates, looked to him for payment, and were directed by him as to what material was to be delivered, and when and where deliveries were to be made.

Bremson was, under this evidence, at most, a materialman, or a procurer of material, and when the lien claimants furnished material to him, for delivery to the Sebastians, the statutory predicate for liens against the property of the Sebastians was absent. *Ivorydale Lumber Co.* v. *Cincinnati Union Terminal Co.,* 45 Ohio App., 353, 187 N. E., 126; DeWitt's Ohio Mechanics' Liens, Section 34 of 1950 Supplement.

The trial court's conclusion that plaintiff, and the cross-petitioning lien claimants, The Brown Lumber Company and The J. P. Loomis Concrete & Supply Company, were entitled to liens upon the Sebastian property, was erroneous because contrary to law.

The first assignment of error of appellant asserts:

The trial court erred prejudicially in failing to find that Security Federal Savings & Loan Association of Cleveland was entitled by law to judgment upon the notes and mortgage, for the following reasons:

A. Security is a holder in due course of the Sebastian notes.

B. The negligence of the Sebastians precludes them from defending on the Sebastian notes.

C. Security's right to foreclosure of the mortgage is not affected by clerical inaccuracies in the description of the indebtedness secured by the mortgage.

Security Federal Savings & Loan Association of Cleveland, a party defendant in the action below, filed an amended cross-petition therein, in which it set out three causes of action, the first two seeking judgment on two promissory notes in the amounts of $3,117.41 and $3,023.88, and the third, the foreclosure of the mortgage upon the Sebastian property allegedly securing said notes.

It is first necessary to state that this evidence shows a failure of consideration as to the contract between Bremson, d.b.a. Nu Homes, and Orval D. and Patricia Sebastian. *Klein & Heffelman Co.* v. *Peterman,* 6 Ohio App., 145.

As between Bremson and the Sebastians, no recovery could be had on the notes and mortgage signed by Sebastians, if they were in the hands of Bremson, and were sought to be enforced by him.

And Security Federal Savings & Loan Association of Cleveland can only enforce said notes and mortgage against the Sebastians if it is a holder in due course of said instruments.

Bremson was an approved dealer under the Federal Housing Act, having been approved by Security Federal Savings & Loan Association of Cleveland.

As such, he was furnished, by Security, with printed forms of F. H. A. Title 1 credit applications, which were addressed to

Security, and had attached to them, as part of the application form, promissory notes payable at Security, and with a printed assignment to Security on the back of the notes. The part of the forms containing the notes was 'perforated, so that the note portion thereof could be detached.

The regulations promulgated by the Federal Housing Administrator, in pursuance of his statutory authority so to do (Sec. 2 [g] of the National Housing Act, Title 12, Section 1703 g, U. S. Code) provided, under Regulation VIII (24 C. F. R., 201.8):

"Disbursement of Loan Proceeds—(a) Disbursement. Before disbursing the proceeds of a loan * * * the insured shall:
"'* * *

"(2) * * * Obtain a completion certificate signed by the borrower and a completion certificate signed by the dealer on forms approved by the commissioner. * * *

"(3) * * * Obtain written authorization from the borrower, if the insured is the payee of the note and the proceeds are to be disbursed to one other than the borrower.''

This evidence shows that Security is the indorsee of two notes from the nominal payee Nu Homes, which notes were signed by defendants Sebastian; that Security was thoroughly familiar with the method employed in making loans of the type here under consideration; that it knew it should not make distribution on the notes in question until it had been furnished with the necessary documents required by the regulations of the Federal Housing Administrator; that it did, through its duly authorized assistant secretary Weiler, discount said notes, and pay the proceeds thereof to Nu Homes, when it had no valid completion certificate signed by the borrowers; that the completion certificates furnished to Security by Nu Homes were forged.

The title of Nu Homes to the notes in question was defective under Section 1301.57, Revised Code, because the notes were, as a matter of law, negotiated to Security in breach of. faith and under such circumstances as amounted to a fraud upon the Sebastians.

Nu Homes knew that the two completion certificates, purportedly signed by Sebastians, were forgeries. Nu Homes fur-

ther knew that, before disbursement upon said notes could properly be made by Security, Nu Homes must present a valid completion certificate to Security, signed by the borrowers. This Nu Homes did not do.

The evidence is such as to justify the conclusion of the trial court that this was a three-party business transaction, subject to limitations known to all parties thereto. Security, acting through Weiler, knew, when it accepted the Sebastian notes for discount, that the notes and the credit applications were all part of the same transaction, and that a completion certificate, signed by the borrowers, must be presented before it, under the Federal Housing Regulations, could pay out the money on the notes to Nu Homes.

If it had paid on the discount of said notes without a completion certificate, it could probably not have recovered under its insurance coverage, and it could not properly claim to be a holder of the notes in due course, because the regulation requiring the procurement of a completion certificate, signed by the borrowers, was passed for the protection of the borrowers, and was a limitation upon Security's right to disburse the proceeds of said notes.

When Security paid, to Nu Homes, for the discount of said notes upon forged completion certificates, its situation was the same as if it had paid with no completion certificates having been produced. *Lincoln Natl. Bank & Trust Co.* v. *Marsh,* 24 N. Y. Supp. (2d), 281. See also: *United States* v. *Roberts,* 115 F. Supp., 786.

The instant action may not present facts which bring it within the first provision of Section 1301.58, Revised Code, that "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect," but in our judgment it does fall within the latter part of the section, which provides: "*or* knowledge of such facts that his action in taking the instrument amounted to bad faith." (Italics ours.)

Weiler, an assistant secretary of Security, in full charge of F. H. A. loans, knew that the Title 1 credit applications and the attached notes were part of the same transaction, and that

he could not properly pay out to Bremson, upon the discount of the notes by Bremson to Security, until he had received a completion certificate signed by the borrowers.

Despite the shortness of the time for the construction provided for in the forged contracts, Weiler, without even an inquiry to the borrowers as to whether the work had been satisfactorily completed by Bremson, or whether the borrowers had signed the completion certificate, accepted the forged completion certificates and disbursed the amounts of the loans to Bremson on the same days the notes were negotiated.

If there is any vitality in Regulation VIII of the Federal Housing Administrator, requiring an insured institution to first obtain a completion certificate, signed by the borrower, before disbursing the proceeds of a loan, then that regulation means that the insured institution must take reasonable precautions to ascertain that the completion certificate of the borrower obtained by it is genuine, and not a forgery.

This Security did not do.

In collaborating with Bremson to circumvent paragraph "(2)" of Regulation VIII of the Federal Housing Administrator, the conduct of Weiler, the duly authorized agent of Security in handling F. H. A. loans, was such, in view of the knowledge which he had, that his action in taking the instruments amounted to bad faith. And the bad faith of Weiler, acting within the scope of his authority, was the bad faith of Security. *C., N. O. & T. P. Ry. Co.* v. *Citizens' Natl. Bank,* 56 Ohio St., 351, at pp. 388-389, 47 N. E., 249, 43 L. R. A., 777; 43 A. L. R., 615, annotation.

We conclude that Security was not a holder in due course of the Sebastian notes.

On the claim of appellant Security that "The negligence of the Sebastians precludes them from defending against Security on the Sebastian notes," it is asserted that the agreement of June 21, 1954, provided that "the notes to be given thereunder would not be executed until the obligations of Nu Homes under the agreement had been performed, but the Sebastians, disregarding this provision, * * * executed said notes and delivered them to Nu Homes before Nu Homes had performed those obligations."

It is true that the contract did provide for the execution of the notes after Nu Homes had performed its agreement, but it was not the premature execution of the notes by Sebastians which caused injury to Security, but the fact that the agent of Security paid out the proceeds of the notes, when they were negotiated by Bremson, upon forged completion certificates.

We think this claim of appellant is without merit.

The claim concerning the irregularities in the mortgage executed by Sebastians to Bremson, we deem to be of slight consequence, because, if Security is not a holder in due course of the notes secured by the mortgage, and the notes are held to be void because of a failure of consideration, then the mortgage securing the notes likewise falls, upon the demand of the mortgagors, and must be canceled.

We find probable error in the admission of incompetent evidence by the trial court, but we are of the opinion that such error as may have occurred was not prejudicial in character.

We do not find the judgment against Security to be manifestly against the weight of the evidence.

Paragraph "(3)" of Regulation VIII required Security to obtain written authorization from Sebastians, if Security was the payee of the notes and the proceeds were to be delivered to one other than Sebastians.

While Nu Homes was the nominal payee of the notes in question, we hold that, under the circumstances of this case, Security was the real payee of the notes.

It is evident that all the parties contemplated, at the time these notes were signed, that Security was the actual payee of the notes, and that Nu Homes, the technical payee, would transfer to Security, by signing the endorsement already printed on the back of said notes; in other words, Nu Homes was a mere intermediary in the transaction.

Therefore, the requirement upon Security to obtain the written authorizations from Sebastians pertained, before disbursement could properly be made to Nu Homes.

This Security did not do, before disbursing the proceeds of the notes to Nu Homes, and in this respect it circumvented compliance with paragraph "(3)" of Regulation VIII.

That part of the judgment of the trial court holding the

liens of Botzum Bros. Company, The Brown Lumber Company, and The J. P. Loomis Concrete & Supply Company, on the Hilbish Avenue property of Orval D. and Patricia A. Sebastian, to be valid, is reversed as contrary to law, and judgment as a matter of law will be rendered for Orval D. and Patricia A. Sebastian

The judgment in favor of the Sebastians and against Security Federal Savings & Loan Association of Cleveland, having accomplished substantial justice herein, is affirmed.

Upon the cross-appeal of Sebastians, it appears that the sum of $307.14 was paid by them to Security Federal Savings & Loan Association to apply upon their two notes held by Security. Those payments were made under the mistaken belief that Security would disburse the proceeds of said notes in compliance with the regulations of the Federal Housing Administrator.

We have. determined that the notes held by Security were void because of failure of consideration, and because Security was not a holder in due course; and cross-appellants Sebastian, as a matter of law, are entitled to recover the amounts paid by them, by way of restitution.

"* * * * One of the grounds on which the doctrine" (restitution) "is based is that when one person confers a benefit on another through mistake, whether of fact or law, the other is liable to make restitution." 77 Corpus Juris Secundum, Restitution, p. 322.

*Judgment affirmed in part and reversed in part.*

HUNSICKER, P. J., and DOYLE, J., concur.