712 P.2d 653

**Lynn BROADHEAD and Judy Broadhead, husband and wife, Plaintiffs-Appellants,**

v.

**Terry HAWLEY and Sheila S. Hawley, husband and wife, Defendants-Respondents.**

No. 15452.

Court of Appeals of Idaho.

Aug. 16, 1985.

Rehearing Denied Dec. 31, 1985.

Dean Williams, Blackfoot, for plaintiffs-appellants.

Stephen J. Blaser, Blackfoot, for defendants-respondents.

Before HUNTLEY, BISTLINE and TOWLES, Acting JJ.

TOWLES, Acting Judge.

Lynn and Judy Broadhead (Broadhead) brought this action seeking quiet title to a strip of land approximately 10 feet wide, running along the south boundary of their property and the north boundary of property belonging to Terry and Sheila Hawley (Hawley). Broadhead alleged in his complaint that he had acquired title to this 10-foot strip by adverse possession. Following a trial before the court, Judge George held that Broadhead had not met his burden of proving his right to the property under any of the doctrines that would

arguably apply, including adverse possession, agreed title, and title by acquiescence. We affirm.

Broadhead and Hawley own adjacent lots in Blackfoot, Idaho. By this lawsuit, Broadhead seeks to settle the boundary between those two properties, not according to their deed descriptions, but along a line which Broadhead asserts has been recognized as the boundary for some 20 years.

The two properties in question were both under the ownership of one Parkinson from 1951 to 1964. When Parkinson received his deeds, the parcel now belonging to Broadhead measured 100 feet by 400 feet, according to its deeded legal description. When Parkinson reconveyed the north parcel to Broadhead's predecessor in 1964, Parkinson altered the legal description, taking off the southern ten feet and adding it to the parcel now belonging to Hawley. Therefore, the parcel which is now Broadhead's became a 90 foot by 400 foot lot.

Broadhead purchased his lot and house in December 1977 from Alan and Evelyn Herbst. Broadhead contends, and Alan Herbst testified, that, at the time Broadhead purchased the property, Herbst pointed out to Broadhead what Herbst understood to be the south boundary. This boundary was represented by Herbst to be marked by an old, rundown picket fence, 30 to 40 feet in length, running along a row of old trees and bushes at the south end of the parcel. The southern boundary is 400 feet long. The deed from Herbst to Broadhead conveyed a piece of property 90 feet by 400 feet, but neither Herbst nor Broadhead measured the property or had it surveyed at the time Broadhead purchased the property. If Broadhead is granted title to the 10 feet at issue here, his parcel will measure 100 feet by 400 feet.

Chris Martin, who owned Broadhead's parcel from 1964 to 1975 before selling it to Herbst, testified that, when he purchased the property, he measured and marked the property lines himself, without benefit of a survey, by using what he thought were survey stakes already on the property. Martin testified that he was never really sure where the north line was, but he assumed that the southern boundary was where stakes had been placed, along the line that roughly coincided with the row of trees. Martin installed the picket fence and proceeded to cultivate and maintain the grass within the 10-foot strip here in issue, to the point of the fence, throughout his 11 years' residence there. Part of that 10-foot strip later served as a play area for the children of renters living in Broadhead's house. The renters kept that area cleared out and planted a garden there.

In about 1966, one Peterson owned the then-vacant lot which now belongs to Hawley, and Peterson constructed a house on his property. In about 1967, when Peterson desired to sell his property, he had trouble finding a buyer, because his property lacked a way of ingress and egress to and from the garage. Peterson himself had been sharing a driveway with Martin, which driveway took in at least part of the 10-foot strip here in question. Martin gave the purchaser a right to use the driveway, but he testified that he refused to grant an easement that would be binding on future owners of either property. The document reflecting such agreement was titled as an easement, but it constituted a personal agreement between the parties for common use of the driveway lying between their respective properties. Later owners of the Hawley property did use the driveway, without objection from Broadhead or Broadhead's predecessors.

Hawley purchased his home south of Broadhead's property in August 1980. At the time he viewed the lot and considered purchasing it, Hawley measured the front footage to see what property he would be buying. However, he had trouble making his own measurements comport with those which the property description purported to include. Specifically, his measurement did not come out with enough front footage, if he accepted Mr. Broadhead's claim, which Broadhead had expressed to Hawley, that Broadhead owned the full driveway. Therefore, as a condition to purchasing the property, Hawley required the realtor to

provide a professional survey, which was done. The result of such survey showed that Hawley's property lines, measured according to the description in his deed, took in the 10 feet here in dispute on the north side of his property. If one followed the survey, then the Hawley property and those properties on either side of Hawley corresponded to their respective deeds. Having taken this precaution of assuring that his square footage corresponded to the property description in his deed, Hawley purchased the property. Later, he removed the old fence and constructed a new picket fence four feet inside the survey line, leaving this four-foot allowance to avoid interference with the children's play area in Broadhead's yard. Broadhead objected to the construction of the fence, and this lawsuit ensued.

The legal descriptions to the parties' properties in question are written in metes and bounds. The parties stipulated that Broadhead and Hawley have each paid taxes on their lots as assessed by the county assessor's office. The county assessor testified that Broadhead's lot was assessed according to its deed description, which covered a lot 90 feet by 400 feet.

■ In analyzing the merits of Broadhead's claims, we begin by noting that the property in question is within the legal description of Hawley's deed and that Broadhead has never been conveyed written title to the 10-foot strip of property he now claims. I.C. § 5–206, in the following language, gives a presumption that ownership of property lies in the person establishing legal, or written, title to it:

"In every action for the recovery of real property, or the possession thereof, a person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the *occupation of the property by another person is deemed to have been under and in subordination to the legal title*, unless it appear that the property has been held and possessed adversely to such legal title, for five (5)

years before the commencement of the action." (Emphasis added.)

The requirements of adverse possession are in turn delineated in I.C. § 5–210 as follows:

"For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

1. Where it has been protected by a substantial inclosure.

2. Where it has been usually cultivated or improved.

Provided, however, that in no case shall adverse possession be considered established under the provisions of any section of this code unless it shall be shown that the land has been occupied and claimed for the period of five (5) years continuously, and the party or persons, their predecessors and grantors, have *paid all the taxes*, state, county or municipal, which have been levied and assessed upon such land according to law." (Emphasis added.)

Since Broadhead had not paid taxes on the disputed parcel, the trial court correctly found that no case of adverse possession had been shown. Broadhead therefore attempts to come within one of the exceptions or qualifications to the doctrine of adverse possession. *See generally, Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981). Broadhead argues that the location of the boundary in question has been settled to be along the old fence line by agreement or by acquiescence. We find, as did the trial court, that that doctrine is inapplicable here.

The doctrine of agreed boundary or boundary by acquiescence was explained in *Trappett v. Davis*, 102 Idaho 527, 531, 633 P.2d 592, 596, (1981), *quoting Downing v. Boehringer*, 82 Idaho 52, 56, 349 P.2d 306, 308 (1960), as follows:

"Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral

agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds ... and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties."

Some question has been raised, among the courts treating the doctrine of boundary by agreement or acquiescence, as to whether a necessary element in the application of that doctrine is that there be an initial dispute between the parties. *See Norwood v. Stevens*, 104 Idaho 44, 47, 655 P.2d 938, 941 (Idaho App.1982) ("Where agreements have derived from ignorance or mistake, they nevertheless appear to have been sustained when accompanied by long acquiescence, construction of a fence or other monument, and possession up to the recognized line"), and cases cited therein. Therefore, the lower court's conclusion, that there was no dispute as to any common boundary line between the properties here involved, might not in itself answer the question of whether a boundary by acquiescence has been established. The trial judge commented at the end of trial:

"[A]s far as I'm concerned, it is fundamental that there must be an oral agreement to have any use to the parties, and the only time you can have an oral agreement is where there's uncertainty and where there's dispute ... [F]irst of all, a lot of testimony was as to people in the same chain of title, that they would say —they'd go out and point out what the boundary line was. 'This was the boundary line.' It was pointed out. It was

pointed out, that was said several times. Any time you are talking about people in the same chain of title, there's no chance for an oral agreement there. The only time an oral agreement means anything is when it's between neighbors who live next to each other and where there's a property line that may be in dispute.

\* \* \* \* \* \*

"... I listened to Mr. Martin closely, and Mr. Martin said any number of times that there was never any dispute. There was never any problem. So, as far as I'm concerned, there was never an oral agreement between the parties here where the boundary was, even uncertain or in dispute. There's not evidence in this case."

The basis of the trial court's decision in favor of Hawley, then, was the lack of both a dispute and an oral agreement between the parties. We do not agree that either an actual dispute or a spoken agreement in resolution of that dispute is necessary to the creation of a boundary by acquiescence. While we disagree with the lower court's rationale, we hold that the trial judge reached the correct result in this case. No boundary by acquiescence exists on these facts, first, because if such a boundary existed prior to 1951, when Parkinson got the parcels, then such boundary was destroyed when Parkinson conveyed a 90 foot by 400 foot parcel to Broadhead's predecessors in 1964, while reserving an additional 10 feet for the southern parcel; and second, because the evidence does not establish any agreement, either oral or implied in conduct, between the parties after 1964. Indeed, the evidence is contrary to a boundary by acquiescence. There was no longer any fence or shrub row on the bulk of the 400 foot border, and the eaves of the Hawley house hang some two feet into the disputed strip.

Where the trial court reaches the correct result, albeit for the wrong reason, we will affirm under the correct rationale. *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984); *Southern Idaho Realty v.*

*Larry J. Hellhake, etc.,* 102 Idaho 613, 636 P.2d 168 (1981).

The decision of the trial judge is therefore affirmed. Costs to respondent Hawley. No attorney's fees on appeal.

HUNTLEY, Acting C.J., and BISTLINE, J., Acting J., concur.