739 P.2d 290

**Norman E. WALKER and Sonja Walker, husband and wife, Plaintiffs-Appellants,**

v.

**SHOSHONE COUNTY, Idaho, Defendant-Respondent,**

and

**State of Idaho, Defendant.**

No. 16233.

Supreme Court of Idaho.

April 7, 1987.

Rehearing Denied June 8, 1987.

Thomas A. Mitchell, and John T. Mitchell, Coeur d'Alene, and Michael J. Vrable, Coeur d'Alene, for plaintiffs, appellants.

Michael K. Branstetter, Wallace, for defendant-respondent.

DONALDSON, Justice.

This is an appeal by the appellants, Walkers, from a grant of summary judgment in favor of the defendant, Shoshone County. The grant of summary judgment was based on the pleadings. As such, for purposes of this appeal, we must accept the truth of the appellants' allegations. *Jones v. St. Maries*, 111 Idaho 733, 727 P.2d 1161 (1986).

The parents of Michael Walker brought a wrongful death action against Shoshone County and the State of Idaho.[1] The relevant facts indicate that on January 11, 1983, Michael, then age 17, was confined to the Shoshone County Jail pursuant to an order of protective custody issued by Shoshone County Magistrate Judge Don Gumaer. The order stated in pertinent part:

"This Court does authorize any Health Officer, Peace Officer or Head of Hospital of the State of Idaho, to take Michael E. Walker into protective custody to wait further petition concerning the mental illness of Michael E. Walker, to protect against immediate and substantial injury to the proposed patient and others. Detention in a non-medical unit is authorized.

Two days later, on January 17, 1983, Michael was found, hanging from a light fixture in the jail, dead by strangulation.

Following the procedures outlined in the Idaho Tort Claims Act, I.C. § 6–901 et seq., the parents filed a claim with the county on April 21, 1983, alleging negligent supervision of Michael on the part of the county officers in charge of the jail. The county failed to act, and therefore, in effect, denied the claim pursuant to I.C. § 6–909.[2] This wrongful death action was commenced in district court on January 8, 1985, nearly eighteen months after the claim had been effectively denied by the county. The complaint alleged the following:

Various employees of Shoshone County and the State of Idaho were negligent in their manner of confinement of Michael Walker. These employees had the opportunity to observe Michael in a confinement-type setting and were aware of his propensity toward self-harm. But despite this knowledge, Michael was confined in a room alone and not supervised or monitored. As a result, he hung himself.

On May 1, 1985, Shoshone County moved for summary judgment on the grounds that: (1) the six-month statute of limitations in I.C. § 5–221 had expired; and (2) the county was immune from liability under I.C. § 6–904(1) of the Idaho Tort Claims Act. The district court granted the defendant's motion with respect to the immunity defense of I.C. § 6–904(1), but denied the statute of limitations defense. The Walkers have now appealed. We conclude that the statute of limitations defense is inapplicable to actions brought under the tort claims act, but that the summary judgment ruling on the immunity defense was erroneous. We therefore reverse and remand. We address each defense separately.

I

**Statute of Limitations**

I.C. § 5–221 states:

"**5–221. Actions on claims against county.**—Actions on claims against a county which have been rejected by the board of commissioners must be commenced within six (6) months after the first rejection thereof by such board."

The Walkers raise two arguments as to why the statute is inapplicable: (1) the issue is not before the Court; and (2) the statute does not apply to actions brought under the Idaho Tort Claims Act, and is in

---

1. The State of Idaho is not a party to this appeal.

2. I.C. § 6–909 states in pertinent part:
   "**6–909. Time for allowance or denial of claims—Effect of failure to act.**—Within ninety (90) days after the filing of the claim against the governmental entity or its employee, the governmental entity shall act thereon and notify the claimant in writing of its approval or denial. A claim shall be deemed to have been denied if at the end of the ninety (90) day period the governmental entity has failed to approve or deny the claim."

fact, superseded by the two-year statute of limitations in I.C. § 6–911 of that Act.

The district court concluded that the immunity defense of I.C. § 6–904(1) applied, and that the statute of limitations in I.C. § 5–221 did not. The Walkers appealed, specifically raising the issue of the immunity defense. Shoshone County did not cross-appeal and, therefore, the Walkers contend that the statute of limitations defense is not before the Court.

■ Only final judgments are appealable as a matter of right. I.A.R. 11(a)(1). *Nelson v. Whitesides*, 103 Idaho 374, 647 P.2d 1246 (1982). A summary judgment ruling which ends the suit, adjudicates the subject matter of the controversy, and represents a final determination of the rights of the parties is a final judgment and appealable. *Idah-Best, Inc. v. First Security Bank*, 99 Idaho 517, 584 P.2d 1242 (1978). A grant of partial summary judgment may be certified by the district court as a final judgment, and thus appealable, when the trial judge makes the determination that there is no just reason for delay. I.R.C.P. 54(b); *Large v. Mays*, 100 Idaho 450, 600 P.2d 126 (1979).

■ The grant of summary judgment, absent an appeal by Shoshone County on the basis of the immunity defense, ended the litigation between the county and the Walkers. The ruling, however, had no effect on the State of Idaho, and thus, was not a final judgment. The trial judge determined, however, that there was no just reason for not allowing an appeal; and, therefore, certified its judgment as final and appealable. Now, the question is what issues can be argued on appeal? The answer turns on the relief sought by the respondent. I.A.R. 11(f), the rule which addresses cross-appeals and issues on appeal, states in pertinent part:

> "(f) Cross-appeals and additional issues on appeal.—After an appeal has been filed from a judgment or order specified above in this rule, a timely cross-appeal may be filed from any interlocutory or final judgment order or decree. If no affirmative relief is sought by way of reversal, vacation or modification of the judgment, order or decree, an issue may be presented by the respondent as an additional issue on appeal under rule 35(b)(4) without filing a cross-appeal." [3]

A cross-appeal is required only when the respondent seeks to change or add to the relief afforded below, but not when it merely seeks to sustain a judgment for reasons presented at trial which were not relied upon by the trial judge but should have been. *Mortensen v. Chevron Chemical Co.*, 107 Idaho 836, 693 P.2d 1038 (1985), (Huntley, J., concurring); *Waterman Steamship Corp. v. Gay Cottons*, 414 F.2d 724 (9th Cir.1969).

■ Shoshone County pleaded the statute of limitations defense below to the trial court. It is not seeking any additional relief, only an affirmation of the trial court's granting of summary judgment. In fact, a reversal upon the statute of limitations does not add to or change the result reached by the trial court. For this reason we hold the statute of limitations defense is properly before this Court. There is no necessity for a cross-appeal in order to preserve that issue, to which we now turn.

The Walkers argue, as the district court ruled, that the statute only applies to contract actions and not to tort actions, because at the time of its enactment in 1881, counties could only be sued in contract and not in tort. Therefore, they argue that to now apply the statute to tort actions would give it a meaning it never had prior to the tentative abrogation of governmental tort immunity in Idaho in the early 1970's.

I.C. § 5–221 is a unique statute. It has been on the books since 1881 and has no counterpart with respect to suits brought against the state, cities or municipalities. This statute has never been discussed in any prior decision in Idaho, and therefore, the issue presented today is a question of first impression.

---

**3.** The second sentence in I.A.R. 11(f) was adopted March 28, 1986, and became effective on July 1, 1986. However, the sentence in no way changes or alters the established rule, but was added for clarification.

Historically, the doctrine of sovereign immunity barred suits brought against the government. This Court partially abolished the doctrine in tort actions in *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970). There, we looked at the policy reasons disfavoring sovereign immunity and the doctrine's abolition by other jurisdictions. We established a rule that a governmental entity is liable for its proprietary acts, but not its governmental acts.

The legislature responded by enacting the Idaho Tort Claims Act, Idaho Sess. Laws, ch. 150, §§ 1–31, p. 743. I.C. § 6–911 of the Act contains a two-year statute of limitations. I.C. § 6–911 states in relevant part:

> "6–911. **Limitation of actions.**—Every claim against a governmental entity permitted under the provisions of this act or against an employee of a governmental entity shall be forever barred, unless an action is begun within two (2) years after the date the claim arose or reasonably should have been discovered, whichever is later."

I.C. § 6–902 of the Tort Claims Act states in pertinent part:

> "6–902. **Definitions.**—As used in this act:
>
> "...
>
> "2. 'Political subdivision' means any *county*, city, municipal corporation, health district, school district, irrigation district, special improvement or taxing district, or any other political subdivision or public corporation....
>
> "3. 'Governmental entity' means and includes the state and political subdivisions as herein defined." (Emphasis added.)

The statutory scheme in the Tort Claims Act sets up a procedure whereby an injured party must file a claim with the governmental entity. I.C. § 6–906 and 6–906A. Once the claim arises, the injured party has two years to bring suit. A county is specifically included within the definition of a governmental entity. However, I.C. § 5–221, which is contained in the limitations of action chapter, limits the time for bringing actions against counties to six months.

This statute does not, as the trial court found, limit itself to contract actions, and would appear, by its terms, applicable to tort actions. These two statutes of limitations appear to be in conflict. Therefore, we must resort to the rules of statutory construction to ascertain legislative intent.

▮▮▮ Absent a contrary contention, a specific statute will control over a more general one. *Mickelsen v. City of Rexburg*, 101 Idaho 305, 612 P.2d 542 (1980). Here, the Walkers' complaint against the county was grounded in tort, and it is undisputed that the Walkers had to follow the procedures outlined in the tort claims act. Therefore, the more specific statute of limitations, the two-year bar of I.C. § 6–911, will control. Further, we see no objective reason to apply the shorter statute of limitations. The legislature has enacted rules for determining tort liability of *all* governmental entities. We cannot conceive of a legislative intent to distinguish between counties and all other governmental entities by applying a six-month statute to counties, and a two-year statute to the state, cities, highway districts, sewer districts, library districts, and all other governmental entities.

## II

### Immunity Under the Discretionary Exception

Having concluded that the two year statute of limitations applies, we now turn to the immunity defense. The tort claims act subjects the state and its political subdivisions to negligence liability for various wrongful acts or omissions. *See* I.C. § 6–903. However, the act also provides for exceptions to liability in I.C. § 6–904. The exception at issue today is I.C. § 6–904(1), the so-called "discretionary function" exception. This provision provides:

> "6–904. **Exceptions to governmental liability.**—A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:

"1. Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."

The "discretionary function" exception has been addressed by this Court in several recent cases. *See Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986); *Jones, supra; Lewis v. Estate of Smith,* 111 Idaho 755, 727 P.2d 1183 (1986); and *Oppenheimer Industries, Inc. v. Johnson Cattle Co.,* 112 Idaho 423, 732 P.2d 661 (1986). The seminal case, *Sterling,* overruled the interpretation of the discretionary function as set out in *Chandler Supply Co., Inc. v. City of Boise,* 104 Idaho 480, 660 P.2d 1323 (1983). The Court in *Chandler* stated, "[t]he discretionary function exemption in I.C. § 6–904(1) shields governmental units from tort liability for the consequences arising from the planning and operational decision-making necessary to the performance of traditional *governmental* functions." *Chandler, supra* at 486, 660 P.2d at 1329. (Emphasis in original.) In *Sterling, supra* at 226–230, 723 P.2d at 770–774, we specifically rejected this "traditional governmental function" analysis and adopted the planning operational test announced by the United States Supreme Court in interpreting the federal counterpart to I.C. § 6–904(1)[4]. *See Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), and *Indian Towing Co., v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The planning/operational test looks to the nature of the conduct of the actor. *Sterling, supra,* 111 Idaho at 230, 723 P.2d at 774. "[D]iscre-

tionary or planning functions of government are exempt from liability in tort, whereas operational functions conducted without 'ordinary care' give rise to no governmental immunity." *Oppenheimer Industries Inc., supra* 112 Idaho at 425, 732 P.2d at 663. Planning activities "involve the establishment of plans, specifications and schedules where there is room for policy judgment and decisions, ..." whereas, operational activities involve "the implementation of statutory and regulatory policy...." *Jones, supra,* 111 Idaho at 736, 727 P.2d at 1164.

On a summary judgment motion, a trial judge should first determine whether the plaintiff's allegation generally states a cause of action for which "a private person or entity would be liable for money damages under the laws of the state of Idaho...." I.C. § 6–903(a); *see Sterling, supra,* 111 Idaho at 216, 218, 723 P.2d at 760, 767; *Jones, supra,* 111 Idaho at 758, 727 P.2d at 1186, n. 1 (Huntley, J., concurring). In other words, is there such a tort under the laws of Idaho? If so, the court must determine whether, as a matter of law, an exception to liability found in the Tort Claims Act or elsewhere shields the alleged misconduct from liability. If no exception applies, the trial court must reach the merits of the claim.

The trial court decision in the instant action, was rendered prior to *Sterling.* Without the benefit of *Sterling,* the trial court concluded that the action was "based upon claims of negligence in regard to operational decisions of county law officers in operating the county jail, a traditional governmental function,"[5] and held the county immune from tort liability on that basis. The complaint alleged various county employees, who were aware of Michael's propensity toward self-harm, negligently placed him in a room unsafe for someone in his condition, and negligently

---

4. The Court in *Sterling* noted that the Idaho legislature's adoption of the Tort Claims Act was patterned largely on the Federal Tort Claims Act and federal case law construing the act. *Sterling, supra,* 111 Idaho at 213, 723 P.2d at 757.

5. We place no weight on the trial judge's characterization of the alleged negligence as an "operational" decision. Based on the limited nature of facts, he could not possibly have found that the decision was "operational" within the meaning of *Sterling.*

failed to monitor his conduct. The issue in this case is whether these actions by the county employees involved planning or operational decisions. Without the record in this case, we are unable to discern the true nature of the employees' conduct. Therefore, we must remand to the trial court.

On remand, absent a summary judgment ruling, the trier of fact should first determine if there was negligence on the part of the county. If so, then it should make a finding as to the nature of the county's conduct. The trial judge will then determine if that particular conduct involved the exercise of discretion. *Sterling, supra,* 111 Idaho at 230, 723 P.2d at 774. If, for example, the evidence on remand indicates the county, due to budgetary constraints or other legitimate factors made a policy decision as to how it would staff the jail facilities, then such a decision would be discretionary and would immunize the county from liability. If, on the other hand, the staff for the jail facilities negligently performed their duties, then the county would not be immune.

Given the limited nature of the facts, it was error for the district court to hold that the county was entitled to immunity under the discretionary function exception of I.C. § 6–904(1). Accordingly, the judgment of the district court granting the county's motion for dismissal on the pleadings is reversed, and this case is remanded.

Costs to appellants.

SHEPARD, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, specially concurring.

Although I continue to disagree with the theory of *Sterling,* I agree that today's opinion is a correct application of *Sterling,* and hence, I concur.

BAKES, Justice, concurring specially:

While I disagreed with the Court's decisions in *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986), and *Oppenheimer Industries v. Johnson Cattle Co.,* 112 Idaho 423, 732 P.2d 661 (1986), today's decision correctly applies the law as set down in those two cases, as I understand it. Accordingly, I concur in the Court's opinion.

BISTLINE, Justice, specially concurring in the Court's judgment which reverses the trial court.

I.

That *Sterling* continues to trouble Bakes, J., and Shepard, C.J., is understandable on the basis of their views previously expressed in this area of the law. Hence, it is equally understandable that they are willing to join a Donaldson, J., opinion which contains the language which troubles Huntley, J., as noted in his special concurrence. As with him, I am troubled also, but see rather clearly that there should be *no* such language. It is clearly the gratuitous dicta which Huntley, J., declares it to be.

Our prior decisions were intended to and did make clear the distinctions between that which is a discretionary governmental function and that which is operational. Such guidelines are drawn to serve the trial bench and bar, and will be applied in accordance with the evidence adduced at trial.

Not at all kept in mind in the majority opinion is the not unimportant factor that the appeal to this Court is from the grant of a defendant's summary judgment motion which put the plaintiffs out of court. There has been no trial; there will be a trial; there is no occasion for this Court to fancifully indulge in any assumptions as to what the trial evidence may or may not "indicate." What the evidence *establishes* or *demonstrates* will form the basis for the court's findings of fact and there is no present reason whatever to anticipate that the trial judge will have any more trouble in applying the law of *Sterling* than was encountered in applying the law of *Chandler* and *Dunbar.*

It is a bad appellate practice to do any more on this type of a record than reverse and remand. Totally unacceptable are any insinuations as to what the evidence may divulge, and how the trial court should react.

It will readily appear to the trial bench and bar that the Court members comprising today's majority of three favoring the giving of such "guidance" on remand choose to believe that it is required under provisions of I.C. § 1–205. That section, however, applies to "questions of law involved in the case presented upon such appeal ... ," and is clearly inapplicable to the law which has been generally declared by this Court. The facts remain to be found at trial, and it is wholly within the province of the trial court, or jury, should the parties so stipulate, to apply the law to the facts and reach the ultimate conclusion.

## II.

At the same time, I strongly commend Donaldson, J., and his office for heading the Court back in the right direction regarding a most disturbing appellate court practice in which this Court has indulged in recent years. Reference is made to the discussion contained in part I of Justice Donaldson's opinion, dealing with the statute of limitations, I.C. § 5–221. In the respondent County's opening brief in this Court, it raised as an issue presented on the appeal:

> If this Court overrules *Chandler*, the trial court's decision should be affirmed on other grounds raised below.

As noted in the majority opinion, the county's motion for summary judgment was two-pronged—one contention being that of the statute. Had the County not raised the issue in the trial court, it would or should have been precluded from raising it in this Court. Such is the true rule. Unfortunately, the Court in recent years has failed to abide by the true rule, and hence the accolades to Donaldson, J., and staff for now giving recognition to the rule as it should be properly applied, and in earlier days was so applied. Initially, when the Court started straying, it was probably more inadvertent than purposeful, but in recent times the deviation has been used to sustain a district court decision which was clearly predicated upon an erroneous legal theory.

A ready example of the many such cases, which are collected in the Idaho and Pacific Digests under Appeal & Error, key number 854(2), is *Duthie v. Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983). There, as noted in the Court's opinion, the issue on appeal dealt with the *res judicata* effect of a prior case between the same parties:

> The Duthies argued that the Gun Club should be precluded from claiming in the second action that the license was revoked because that issue of revocation should have been raised in the first action. In reviewing this issue, *the trial court held that res judicata applies only to issues raised by the pleadings.* After a review of the complaint and answer in Case No. 29669, the trial court found that nothing in the pleadings raised the issue of "use or continued use of the waterline in question." The motions for summary judgment were denied. *Id.* at 753, 663 P.2d at 289 (emphasis added).

There ensued a trial and a trial judge decision adverse to the Duthies, who appealed. The Court's opinion squarely noted that "the Duthies contend that this issue of res judicata was erroneously decided," *id,* at 753, 663 P.2d at 289, and then proceeded to concede that the trial court had indeed erred, BUT, pointed to a procedural method by which the Duthies could be deprived of the reversal to which they were clearly entitled:

> Even though we disagree with the trial court's finding that res judicata applies only to issues raised by the pleadings, where an order of the lower court is correct but based upon an erroneous theory, the order will be affirmed upon the correct theory. *Foremost Insurance Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981). *Duthie, supra,* 104 Idaho at 753, 663 P.2d at 289.

The Court was then faced with the task of "discovering the correct theory." In doing so, it had to work around its own concession that the law of *res judicata* was firmly entrenched by prior Idaho cases, none of which were in the least equivocal. To the credit of counsel for the Gun Club, it had made no suggestion of a correct theory

that would circumvent the law of *res judicata*. Its best argument was actually self-defeating:

> "Though the Gun Club and the Duthies *could* have litigated the issue of the revocability of the Duthies' license in Case No. 29669, they did not do so. Since they did not actually litigate the issue of the revocability of the license in Case No. 29669, *res judicata* does not bar the litigation of that issue in Case No. 37367." *Id.* at 757, 663 P.2d at 293.

The innovative but doubtful "correct theory" to which a first, second, third, and fourth member of the Court subscribed as being the correct theory was this, which I will not attempt to paraphrase, because it is to my mind incomprehensible:

> In this case facts occurred subsequent to the first trial that led to the filing of the second suit, *i.e.*, the cutting and capping of the waterline. Therefore, even though the same facts may be used to determine whether the license was revocable as were used in the first action to determine whether a license existed, because facts occurred subsequent to the first trial that triggered the filing of the second suit, we hold that the issue of revocability was not ripe for trial in the first case, but rather, was premature until the license was actually revoked. *Heaney, supra.* Therefore, we uphold the trial court's decision that res judicata does not bar the raising of the issue of revocability in the second suit. *Id.* at 754, 663 P.2d at 290.

Ironically, West Publishing Company, in headnote 1, picked from that opinion of the Court the very statement of the law of *res judicata* which has forever applied in Idaho,[1] and has been given application in a number of post-*Duthie* cases, and *Duthie* is never again mentioned.[2]

Hopefully, after today there will never be another opinion which sustains an erroneous trial court decision or ruling on another and correct theory of law *unless* that correct theory was, as here, indeed presented to and urged upon the trial court. Shoshone County recognizes that the "correct theory" must have been preserved for appellate review by having been urged below, and today's opinion blessedly does likewise. It was formerly so. Extensive research on my part shows the genesis of this peculiar appellate practice, which was sound, then degenerated, and is today making a comeback to a proper utility.

So long ago that there are comparatively but a handful of attorneys left who remember, once upon a time there were no rules governing pleadings, but instead, we had a relatively more simple system called code pleading, which many of the surrounding states still enjoy. There was then, as now, a complaint which was the first pleading. To the complaint the defendant could first demur even before he answered, or he could do both at the same time. There were seven grounds of demurrer. A demurrer was considered "general" if it claimed a cause of action had not been stated; the other six grounds of demurrer were called special. The demurrer could be

---

1. Headnote 1 reads as follows: "Res judicata does not apply only to issues raised by pleadings, rather, it applies to every matter which might and should have been litigated in first suit whether or not it was raised in pleadings."

2. Mention should be made that my concerns as to the validity of the *res judicata* exception of the *Duthie* opinion are not to be taken as reflecting on its apparent author. The opinion reported in 94 Idaho was the second opinion. An earlier unreported opinion reversing the trial court was withdrawn after a rehearing was granted, and the case reargued. That opinion is now only to be found in the Idaho Capital Reports, where it will show Donaldson, J., as the author, and McFadden, J., Bistline, J., and Scoggin, J. (pro tem) concurring with Bistline,

J., writing a special concurring opinion which explained and distinguished the *Heaney* case, and Bakes, J., dissenting with opinion.

Our first opinion in *Duthie* was soundly written. My dissent to the second opinion incorporates the salient portions of the August 11, 1981, earlier opinion, on all of pages 758 (less the first three lines), all of p. 759, and the first ten lines of p. 760 of 104 Idaho Reports.

It was my understanding at the time, and remains so, that the turnabout in the second opinion was not the apparent author commanding the other three votes, but rather the other three persuading the author who, in a display of collegiality, was dissuaded from what he had earlier written in favor of what was a majority's changed consensus.

based on any or all of the seven enumerated grounds. It was a common practice to demur both generally and specially. Demurrers were sometimes sustained and a complaint dismissed.

In *Gagnon v. St. Maries Light Co.*, 26 Idaho 87, 141 P. 88 (1914), the Court had before it an appeal which involved three grounds for demurrer, only two of which were under consideration on appeal. Although it is probable that other earlier-filed opinions may have erroneously established the proposition relied upon in *Gagnon,* it was there ruled that if a demurrer is good **on any ground stated,** it should be sustained on appeal, even though the trial court had sustained the demurrer on an erroneous ground. *Id.* at 91, 141 P. at 90 (bold emphasis added).

The *Gagnon* case was cited for the same principle in *Feenan v. Kendrick,* 32 Idaho 220, 179 P. 507 (1918): "If a demurrer, sustained by the trial court, is good on any ground, the ruling will not be reversed."

The older attorneys of the bar who practiced under code pleading will remember well the regular interposing of a general demurrer—usually to gain time—and most of the grounds for special demurrer. There was nothing wrong with the *Gagnon* rule, for the plain reason that the various grounds had indeed been pleaded.

Misapplication of the *Gagnon* rule seems to have been initiated by the Court in the March, May and July 1966 cases of *Jackson v. Blue Flame Gas Co.* 90 Idaho 393, 412 P.2d 418; *Fike v. Bauer,* 90 Idaho 442,

412 P.2d 819; and also in *Layrite Products Co. v. Lux,* 91 Idaho 110, 416 P.2d 501. Browsing quickly through *Layrite,* it is seen that the trial court denied a materialman's lien against an owner on the basis that the supplier, Layrite Co., relied on the general credit of the owner's contractor. The Supreme Court nevertheless affirmed the decision below by making its own finding of fact that Layrite relied *"exclusively"* on the contractor's credit. By so doing, the Court neatly circumvented an array of authority relied upon by appellant standing "for the proposition that a materialman does not forfeit the right to a lien where he has *primarily* relied upon the credit of the contractor or some other person in furnishing materials for the construction, alteration, or repair of a particular structure or improvement." *Layrite, supra,* 91 Idaho at 115, 416 P.2d at 506 (emphasis added). "Primarily," of course, is less than "exclusively" and solely by resorting to authority neither cited to nor relied upon by the trial court, the Supreme Court very nicely avoided reversing the trial court. That is a nice behavior toward the trial court, but no credit was due this Court, unless there is a principle of appellate review procedure which entitles members of the Court to use their superior knowledge toward the end of letting the trial bench and bar know how a case should have been tried and decided. It smacks of appellate court advocacy. I have heard it said that appellate justices and judges *should not do so* —but perhaps that is only when they do not want to do so.[3] *Gagnon*

---

3. The *Layrite* opinion points to the three cases which were used to defeat the appeal:

> Cf. *Botzum Bros. Co. v. Brown Lumber Co.,* 104 Ohio App. 507, 150 N.E.2d 485 (1957); *Schuman v. Teague,* 195 Okl. 328, 156 P.2d 1010 (1945); *Ohio Oil Co. v. Fidelity & Deposit Co.,* [42 N.E.2d 406 (1942)]. *Layrite, supra,* 91 Idaho at 115, 416 P.2d at 506.

A reading of those three cases, two being from Ohio and one from Montana, leaves considerable doubt that any of them have much bearing on Idaho litigation revolving around the Idaho materialman's lien statute. The respondent's brief in *Layrite* strongly suggests that there was no error committed by the trial court. That brief's conclusion, compared against the record, appears amply sustained. It states:

> The findings of the trial Court, based upon substantial evidence, demonstrate without peradventure that the sale of the materials involved herein were sold to a contractor on a general credit sales basis, and these findings are admitted by appellant in the position taken and expressed in appellant's brief.
> The trial Court found, based on substantial evidence, that the materials were not furnished for the use in any particular structure, and respondents respectfully submit that appellant can hardly claim otherwise in this case.
> The authorities cited in appellant's brief from other jurisdictions, to the effect that a sale on general credit to a contractor does not afford a defense by the landowner where the materialman has not been paid, though the

did not sustain the Court's conduct in *Layrite*.

A few years later, although *Gagnon* was not cited as enabling authority, the Court upheld an erroneous trial court ruling which had admitted into evidence a police officer's accident report. The report stated that the deceased driver had run a stop sign and driven into the path of an oncoming loaded car transport truck. The Court's opinion avoided stating the basis upon which the trial court had admitted the exhibit.[4] The Court manufactured *its own* basis for holding the report admissible which was *not* on a ground urged by defense counsel or utilized by the trial court. Possessing a more superior knowledge of the law than extremely able counsel, the Court resorted to I.C. §§ 9–316, 9–317, and 9–318, which deal with admitting into evidence "written reports or findings of fact made by officers of this state, on a matter within the scope of their duty as defined by statute...." *Bell v. O'Connor Transport Ltd.*, 94 Idaho 406, 408, 489 P.2d 439, 441

(1971). As a result, the trial court's win-loss record was enhanced, but the plaintiffs (husband and daughter of the deceased) did not get a new trial to which they were clearly entitled, and for certain had not had a fair trial because of admission of the accident report.

It may be of some solace to the deceased mother, R.I.P., that eight short years later, the Court overruled *Bell v. O'Connor's* holding that an accident report is admissible as substantive evidence. *Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979). The officer's report in the *Bell* case was based on the truck driver's self-serving statements. The driver of the car had no input, having been killed on impact.

It would be interesting to hear from those attorneys who pursued an apparently sure-win appeal, only to have the Supreme Court decide the issue presented on a "correct" ground or theory which was not ever urged upon the trial court.[5]

contractor has, do not find support in the decisions of our state. In fact, the decision of *Colorado Iron Works vs. Riekenberg*, 4 Idaho 705 [43 P. 681], negates such theory. To advance the theory of appellant's position in this regard by a reversal herein of the trial Court's findings and decree, would ultimately allow any individual, firm or corporation to pursue lien rights never anticipated by the statute or such supplier at the time of sale and delivery, and, in effect, establish and foreclose a lien on any structure in which he could identify any of the materials sold. Such is not the law of this state, nor can it in equity and good conscience become the law of this state. It is one thing to assert that lien laws should be liberally construed to effect their object and to promote justice and quite another to pervert such lien laws to thereby establish an injustice.

The decree of the trial Court should, by this Court, be affirmed. *Layrite*, Respondent's Brief, pp. 27–28.

4. The reporter's transcript in the *Bell v. O'Connor* case, available from the clerk's office, shows that when the accident report was offered, on *voir dire* examination of the office who prepared it that the information thereon contained what he was told by the driver of the truck. It was objected to on the basis of the statutory prohibition against its use, and the recorded hearsay of the driver contained therein.

The only statement made in support of its admissibility was this:

I hate to argue matters. It isn't a statement by Mr. Smith, it is the official report called for by statute. He has testified to his investigation and has expressed his opinion here as to his investigation. This contains a full and complete report that the law requires him to complete, and was so completed at the time of the accident. It is not inadmissible, not barred by statute and it is pertinent to the issues. It maybe could go to the weight of evidence but as to its admissibility, that is something else again. R., p. 111.

The trial court's reasoning in admitting the exhibit was only this, and nothing more:

THE COURT: Objection will be overruled. It may be admitted. R., p. 111.

5. Cases listed in the Idaho Digest include:

*Broadhead v. Hawley*, 109 Idaho 952, 712 P.2d 653 (Ct.App.1985)

*M & H Rentals, Inc. v. Sales*, 108 Idaho 567, 700 P.2d 970 (Ct.App.1985)

*Dursteler v. Dursteler*, 108 Idaho 230, 697 P.2d 1244 (Ct.App.1985)

*Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984)

*Barr Development, Inc. v. Utah Mortgage Loan Corp.*, 106 Idaho 46, 675 P.2d 25 (1983)

*Newbold v. Arvidson*, 105 Idaho 663, 672 P.2d 231 (1983)

*Southern Idaho Production Credit Ass'n v. Ruiz*, 105 Idaho 140, 666 P.2d 1151 (1983)

*Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983)

Hopefully, under the auspices of Donaldson, J.'s opinion today which *is* a correct appellate procedure, the misapplication of the *Gagnon* rule will come to a halt.

### III.

The opinion for the Court is also to be commended for its holding that a cross-appeal is not required in order to urge the second ground of defense which the trial court ruled against, *i.e.*, the statute. It has become extremely evident that beginning somewhere in 1972 the Court has been unusually hyperactive in the mass production of rules, paragraphs of rules, subparagraphs, and sub-subparagraphs. The trial bar will be delighted to see that as of now, an issue can be raised in a respondent's brief, although I feel certain that cases can be found in the past ten years where an issue was turned away on the grounds that the party raising it had not cross-appealed.

It may be that today the Court is off in a better direction. What we do today is reminiscent of *Rabido v. Fury*, 33 Idaho 56, 190 P. 73 (1920), where the Court sensibly stated: "Since the appeal was taken from the judgment, and not from a portion thereof, the entire judgment is before the court *and subject to review, even though the* respondents took no cross-appeal." 33 Idaho at 65, 190 P. at 82.

HUNTLEY, Justice, concurring specially.

I concur in the majority opinion, having some reservations about the way the bench and bar might interpret the following impure, adulterated dicta near the end of the opinion:

> If, for example, the evidence on remand indicates the county, due to budgetary constraints or other legitimate factors made a policy decision as to how it would staff the jail facilities, then such a decision would be discretionary and would immunize the county from liability.

I can foresee enterprising counsel urging upon trial courts that the foregoing sentence means that a governmental agency can immunize itself against the consequences of negligent conduct by formally issuing a policy decision to fund and perform certain operations in a negligent manner.

This majority opinion does not stand for the proposition that a governmental agency can adopt a policy to perform operational functions in a negligent and careless manner, because by definition and in accord with the overall policy of the Idaho Tort Claims Act, the discretionary function exception of I.C. § 6–904 does not license a governmental entity to develop a policy to be "intentionally negligent"—such would be in total conflict with the purpose and

*Idaho Falls Consol. Hospitals, Inc. v. Bingham County Bd. of County Com'rs*, 102 Idaho 838, 642 P.2d 553 (1982)

*Goodwin v. Nationwide Ins. Co.*, 104 Idaho 74, 656 P.2d 135 (Ct.App.1982)

*Lowe v. Lym*, 103 Idaho 259, 646 P.2d 1030 (Ct.App.1982)

*Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 627 P.2d 317 (1981)

*Matter of Revello*, 100 Idaho 829, 606 P.2d 933 (1979)

*Eimco Corp. v. Sims*, 100 Idaho 390, 598 P.2d 538 (1979)

*Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979)

*Robison v. Compton*, 97 Idaho 615, 549 P.2d 274 (1976)

*City of Weippe for Use and Benefit of Les Schwab Tire Centers of Idaho, Inc. v. Yarno*, 96 Idaho 319, 528 P.2d 201 (1974)

*Lemmon v. Hardy*, 95 Idaho 778, 519 P.2d 1168 (1974)

*Church v. Roemer*, 94 Idaho 782, 498 P.2d 1255 (1972)

*Johnson v. Gorton*, 94 Idaho 595, 495 P.2d 1 (1972)

*Nysingh v. Warren*, 94 Idaho 384, 488 P.2d 355 (1971)

*Industrial Indem. Co. v. Columbia Basin Steel & Iron, Inc.*, 93 Idaho 719, 471 P.2d 574 (1970)

*Openshaw v. Adams*, 92 Idaho 488, 445 P.2d 663 (1968)

*Bjornstad v. Perry*, 92 Idaho 402, 443 P.2d 999 (1968)

*Layrite Products Co. v. Lux*, 91 Idaho 110, 416 P.2d 501 (1966)

*Fike v. Bauer*, 90 Idaho 442, 412 P.2d 819 (1966)

*Jackson v. Blue Flame Gas Co.*, 90 Idaho 393, 412 P.2d 418 (1966)

*Bistline v. Eberle*, 88 Idaho 473, 401 P.2d 555 (1965)

*Evans v. Continental Life & Acc. Co.*, 88 Idaho 254, 398 P.2d 646 (1965)

*Andrus v. Irick*, 87 Idaho 471, 394 P.2d 304 (1964)

*Saulls v. Employment Sec. Agency*, 85 Idaho 212, 377 P.2d 789 (1963)

*Clark v. Clark*, 58 Idaho 37, 69 P.2d 980 (1937).

intent of the Idaho Tort Claims Act. That purpose was to provide governmental responsibility for negligent conduct of its employees in performance of governmental functions, just as had previously been the case in the performance of proprietary functions.

If I were authoring the opinion and felt the urge to espouse dicta, I would rephrase the subject sentence and the one which follows it thusly:

> If, for example, the evidence on remand indicates the county, due to budgetary constraints or other factors made a policy decision that it would not provide certain services to the public, then such a decision would be discretionary and would immunize the county from liability. If, on the other hand, the county undertakes to provide a service, it is required to use ordinary and reasonable care in the performance of that service.